[Crim. No. 14597. Second Dist., Div. Four. Jan. 31, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. FREDDIE THOMAS, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, Broady, Scarlett & Robenson and Earl C. Broady, Jr., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Megan A. Wagner, Deputy Attorney General, for Plaintiff and Respondent.

DUNN, J.—Appellant was engaged in a fight on July 11, 1966, with one Edward "Toughy" Ballard who died that date as a result of knife wounds inflicted by appellant, who was charged with his murder. At trial he was found guilty of voluntary manslaughter, a lesser and included offense. On this appeal, appellant asserts four grounds for reversal.

I. *Did The Trial Court Err In Excluding Evidence Of Other Fights Involving Deceased?*

A witness who did not see the fight, called by the defense, testified he had fought before with "Toughy." When asked by defense counsel how many times, a prosecution objection was sustained. Citing present Evidence Code section 1103, appellant urges us to hold the exclusion of evidence was erroneous.

Trial of the case took place in October 1966, nearly three months before the Evidence Code became effective, namely, on January 1, 1967. Under section 1103, where offered by defendant in a criminal action, evidence of the character or a trait of character of the victim may be admissible to prove conduct of the victim in conformance with such character or trait; the proof may consist of reputation or opinion evidence or of specific instances of conduct. Before the enactment of section 1103, however, evidence of specific acts was inadmissible for such purpose. (*People* v. *Rowland* (1968) 262 Cal.App.2d 790, 797-798 [69 Cal.Rptr. 269]; *People* v. *Davis* (1965)

63 Cal.2d 648, 655-658 [47 Cal.Rptr. 801, 408 P.2d 129].)

Likewise, and as to appellant's claim of self defense, the evidence was properly excluded. Thus, where a defendant claims to have been in fear of a deceased victim, his mental state would be relevant and his awareness of the deceased's pugnacious character or of specific acts of prior belligerence would tend to show the reasonableness of his fears. Here, there was no evidence that appellant saw, had been told of or was otherwise made aware of any earlier fight or fights involving "Toughy." Such situation is readily distinguishable from that in *People* v. *Mathis* (1965) 63 Cal.2d 416, 430 [46 Cal.Rptr. 785, 406 P.2d 65], *People* v. *Davis, supra,* p. 656, and in the later decision of *People* v. *Smith* (1967) 249 Cal. App.2d 395, 404-405 [57 Cal.Rptr. 508], all cited and relied upon by appellant.

Finally, when objection to the question was sustained, no offer of proof was made to tell the trial court or us what the answer would have been, if allowed. The witness was asked, "Have you ever had a fight with Toughy?" and answered, "Yes." As to the next question, "On more than one occasion?" objection was sustained. "[1] The asking of questions, unless they disclose the proof expected to be adduced, is not the equivalent of an offer of proof." *People* v. *Danielly* (1949) 33 Cal.2d 362, 376 [202 P.2d 18]. (And see also: *People* v. *Ratten* (1940) 39 Cal.App.2d 267, 270-271 [102 P.2d 1097]; *People* v. *Asta* (1967) 251 Cal.App.2d 64, 76 [59 Cal. Rptr. 206].) The question asked, "On more than one occasion?" does not reveal if the answer would have been "Yes" or "No." Furthermore, the trial court was not advised what the evidence would be concerning any other fight and, for aught known, it might have disclosed that the witness, and not "Toughy," was the aggressor.

For the foregoing reasons, we find no error in the court's ruling.

II. *Did The Trial Court Err In Excluding Proferred Testimony Of Appellant Regarding His Conduct After The Fight?*

■ After testifying on direct examination that the fight ended, that "Toughy" went inside the house and that appellant went to the window, looked in and saw "Toughy" lying on the floor, he was asked:

"Q. Did you go in then? A. Yes.

"Q. Did you try to help him? A. Yes.

"Q. What did you do in that respect?"

Objection to the last question was sustained, and appellant claims this to be error, citing: *People* v. *Ogg* (1958) 159 Cal. App.2d 38 [323 P.2d 117]; *People* v. *Taylor* (1961) 189 Cal. App.2d 490 [11 Cal.Rptr. 480]; *People* v. *McCartney* (1963) 222 Cal.App.2d 461 [35 Cal.Rptr. 256]; and *People* v. *Jones* (1965) 232 Cal.App.2d 379 [42 Cal.Rptr. 714]. All of these cases involve the prosecution's proof of a defendant's conduct after a killing, offered to establish that such defendant had an abandoned and malignant heart thus establishing, by implication, the malice necessary to a second degree murder conviction. For that purpose it was held relevant. Here, appellant contends evidence of his subsequent conduct was admissible to show lack of malice in order to defeat the charge of murder against him.

But, again, no offer of proof was made and neither we nor the trial court are informed as to the answer expected. What we have said in discussing the first point on this appeal is again applicable. Of more significance, however, is the fact appellant was not convicted of murder but of voluntary manslaughter, only, which is defined as ". . . the unlawful killing of a human being, without malice." (Pen. Code, § 192). The trial court having found no malice existed, appellant is in no position to complain of its ruling on the evidence for, if erroneous, no miscarriage of justice resulted (Cal. Const., art. VI, § 13) and the error was not prejudicial.

III. *Was Appellant's Waiver Of His Constitutional Right To A Trial By Jury Effective?*

Appellant argues that his waiver of his constitutional right to a jury trial (Cal. Const., art. I, § 7) was ineffective because he was not told by the court that, in a jury trial, he could not be found guilty except upon unanimous verdict of the 12 jurors.

Article I, section 7 provides: ". . . A trial by jury may be waived in all criminal cases, by the consent of both parties, expressed in open court by the defendant and his counsel. . . ." Here, the waiver was expressed by appellant and his counsel, was joined in by the prosecution and was made in open court. The footnote quotes the proceedings.[1] His waiver

[1] "THE COURT: People versus Freddie Thomas.

MR. ERSKINE: Defendant is present and ready.

The defendant desires to give up his right to a trial by jury and have the matter heard by the Court, sitting without a jury.

THE COURT: Very well.

Take the waiver.

MR. FELDMAN: Freddie Thomas, is that your true name?

was not ineffective so as unlawfully to deprive him of his constitutional right. "[2a] Defendant's argument that he waived a jury trial without realizing its implications is also without merit. [3] The trial court in a criminal case is not required to explain to the defendant the nature and consequence of his action in waiving a jury trial where he is, as in the present case, represented by counsel and fails to show that either he or his counsel was misled as to the result which might occur from his waiving a jury trial. A defendant should not be allowed to waive a jury trial, take his chances before the trial court, and then when he finds himself dissatisfied with the result, be allowed to predicate error upon such a technicality or vague possibility of misunderstanding. (*People* v. *Langdon, supra,* 52 Cal.2d 425, 432 [2] et. seq. [341 P.2d 303].)" *People* v. *Golston* (1962) 58 Cal.2d 535, 538-539 [25 Cal.Rptr. 83, 375 P.2d 51].

In *People* v. *Lookadoo* (1967) 66 Cal.2d 307, 311 [57 Cal. Rptr. 608, 425 P.2d 208] the court states: "[2] Although the trial court in a criminal case is not required to explain to a defendant the nature and consequence of his action in waiving a jury trial where he is, as in the case at bar, represented by counsel and fails to show that either he or his counsel has been misled as to the result which might occur from his waiving a jury trial. . . ."

THE DEFENDANT: Yes, sir.

MR. FELDMAN: In Superior Court case number 326,411, wherein you are charged with murder in violation of Section 187 of the Penal Code, have you discussed with your counsel the matter of a trial by jury?

THE DEFENDANT: Yes.

MR. FELDMAN: You understand that you are entitled to a trial by jury; that is, 12 citizens who will sit in the jury box and make all of the determination on the questions of fact presented, and the Court will make the determinations on questions of law.

Do you understand that?

THE DEFENDANT: Yes, sir.

MR. FELDMAN: You waive or give up your right to a trial by jury, and want to have the Court sitting without a jury make the determination, both as to the questions of fact and all the questions of law?

Do you understand that?

THE DEFENDANT: Yes, sir.

MR. FELDMAN: Have you discussed this with your counsel?

THE DEFENDANT: Yes.

MR. FELDMAN: Is it your desire to waive the jury at this time and have the Court sitting without a jury make all of the determinations and your finding of guilt or innocence?

THE DEFENDANT: Yes, sir.

MR. FELDMAN: Counsel join?

MR. ERSKINE: I join.

MR. FELDMAN: People will join in the waiver of the jury."

IV. *Was The Evidence Insufficient To Sustain The Judgment?*

 Appellant contends he gave uncontradicted testimony which established self-defense as a matter of law requiring the trial court to find the killing was justified (Pen. Code, § 197). Therefore, he urges, the judgment must be reversed.

The rule applying to a contention so made on appeal is succinctly stated in *People* v. *Jones* (1965) 232 Cal.App.2d 379 wherein the court says (pp. 388-389 [42 Cal.Rptr. 714]) : "[4] After conviction, all intendments are in favor of the judgment and the verdict will not be set aside unless the record clearly shows that upon no hypothesis whatever is there sufficient substantial evidence to support it." This rule applies also to nonjury trials. (*People* v. *Gunn* (1959) 170 Cal.App.2d 234, 238-239 [338 P.2d 592]; *People* v. *Johnson* (1960) 187 Cal.App.2d 116, 121-122 [9 Cal.Rptr. 571]; *People* v. *Swanson* (1962) 204 Cal.App.2d 169, 172-173 [22 Cal.Rptr. 178].)

The evidence discloses a clear basis for disagreement with appellant's position. Appellant and "Toughy" both slept at the home of a female friend the night before the stabbing. They had a few angry words that night and, again, the next morning at about 8 a.m. though no blows were struck. Later in the morning appellant was at the foot of an inside stairway talking with a woman friend when "Toughy" appeared at the top. He told appellant to stay out of his business. After a few more words, "Toughy" ran down the stairs at him. Appellant grabbed a broom and hit "Toughy" with it but it didn't stop him. He kept coming and hit appellant who was frightened and ran outside where he backed up against a parked car. "Toughy" pursued him and appellant feared would seriously hurt him, so he pulled out his pocket knife and stabbed "Toughy" twice, once in the chest and once in the side. "Toughy" displayed no weapon of any sort.

Whether or not, pursuant to Penal Code section 197, appellant had reasonable grounds to believe his victim was about to commit a felony or do great bodily injury ordinarily is a question of fact (*People* v. *McAuliffe* (1957) 154 Cal.App.2d 332, 340 [316 P.2d 381]), and the reasonableness of his using a knife obviously capable of causing serious injury and death also is a question for the trier of fact. (*People* v. *Young* (1963) 214 Cal.App.2d 641, 646 [29 Cal.Rptr. 595] : ". . . a justifiable homicide connotes only the use of force which is necessary, or which reasonably appears to be necessary, to

resist the other party's misconduct; that use of excessive force destroys the justification, but the question of whether there was such an excess is ordinarily one of fact. . . .'')

Here, the trial judge resolved these issues against appellant and we are bound by his findings in that respect.

The judgment of conviction is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 9, 1969.