[Crim. No. 23685. Aug. 15, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
STANLEY WRIGHT, Defendant and Appellant.

COUNSEL

Mark E. Cutler, under appointment by the Supreme Court, and Jon P. Beaver, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller, W. Scott Thorpe, Charles P. Just and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOSK, J.—Defendant appeals from a judgment convicting him of first degree murder. He contends (1) evidence that the victim had heroin in his system within 24 hours before his death was improperly excluded under Evidence Code section 352; (2) evidence that the victim was under the influence of heroin when he violently resisted arrest in 1979 was improperly excluded; (3) the jury was erroneously instructed on the elements of first degree murder; (4) the court erred in refusing to order a mistrial or dismissal as a sanction for the prosecution's failure to disclose certain evidence to the defense; and (5) the evidence was insufficient to support the verdict.

We conclude that although defendant's first and third contentions have merit, neither error requires reversal of the judgment in that it is not reasonably probable that a result more favorable to the defense would have been reached in the absence of the errors. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) The judgment must therefore be affirmed.

Some time after 11:30 p.m. on December 1, 1981, Gilbert Jurado and his wife noticed an electric light flickering and sparking in the trailer park adjacent to their home. Disturbed by the light, Mrs. Jurado went to report the problem to the manager of the trailer park. In order to reach his house, which was located in the rear of the park, she had to pass the trailer in which defendant lived. She there encountered defendant, who threatened to harm her if she did not leave the trailer park. She returned directly home and informed her husband that she had not spoken to the manager.

Shortly thereafter Mr. Jurado went to talk to the manager about the light. He woke the manager, reported the problem, and apparently began to return home. Within the next few minutes, two witnesses heard defendant say something to the effect of "you fat son of a bitch"; Jurado was 6 feet 5 inches tall and weighed 281 pounds. Defendant then stood with his arms outstretched and shot Jurado four times, killing him. Mrs. Jurado, looking over her back fence, saw defendant fire the shots but could not see her husband or the gun from her vantage point. Neither Jurado nor his wife had ever met defendant before the night of the shooting.

Mrs. Jurado testified that her husband had used heroin in the past, but that when he was under the influence he was not assaultive and in fact "slept a lot." She further stated that her husband had not used heroin for more than two years because he had only recently been released from prison. She also testified that neither she nor her husband had used heroin on the day of his death. A pathologist testified that the condition of Jurado's veins indicated multiple prior nonmedical injections as well as some recent injections. He gave his opinion that Jurado's vein had been injected within a week prior to his death but not within the 24 hours immediately preceding that event.

Defendant gave a statement to the police in which he admitted shooting the victim but denied the entire encounter with the wife. According to defendant, Jurado approached him, accused him of "messing around" with Mrs. Jurado, and threatened to "get him." Defendant denied the accusation and told him that he "must have the wrong guy" that he did not know the wife. Jurado assertedly continued to threaten defendant, who became frightened and ran into his trailer to arm himself. He got his gun, went back outside, and began looking and shouting for Jurado. After two to three

minutes, Jurado stepped out from behind a trailer and said, "here I am, you fat bastard." Defendant, believing the victim was armed and was reaching for a weapon, fired at him.

Defendant's trial testimony was consistent with his statement to the police. He testified, however, more completely as to his state of mind at the time of the shooting. He said that his intention in seeking out Jurado was not to shoot him but only to scare him and make him leave the area. He saw Jurado reaching toward his back pocket for what defendant believed was a weapon. He testified that he acted in self-defense, and that he shot the victim only because he thought "it was me or him." On redirect examination, defendant stated that Jurado was acting irrationally and might have been under the influence of some drug.

Defendant's final witness presented evidence concerning the character of the victim: a police officer testified to the arrest of Jurado in 1979, and stated that at the time of this arrest he attacked the officer and had to be forcibly subdued. The court limited the scope of the officer's testimony by refusing to allow him to state that the victim was under the influence of a narcotic when arrested or that the victim was charged with possession of heroin as a result of the arrest.

I

Defendant first contends the court erred in excluding evidence that the victim had heroin in his system within 24 hours of his death. Defendant's offer of proof consisted of the testimony of two expert witnesses. The first, Dr. Timothy McKenna, testified in chambers that he had performed a test of the victim's urine that revealed the presence of morphine. Dr. McKenna further stated that within one hour after heroin is introduced into the system, it is metabolized into morphine. Defendant further offered that a second expert, Dr. Frye, if called to testify, would state that the presence of morphine in the victim's urine would indicate that heroin had been introduced into the system within the past 24 hours.

Section 352 of the Evidence Code provides in pertinent part: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ." █ It is settled that "[w]hen a section 352 objection is raised, 'the record must affirmatively show that the trial judge did in fact weigh prejudice against probative value.'" (*People* v. *Leonard* (1983) 34 Cal.3d 183, 187 [193 Cal.Rptr. 171, 666 P.2d 28], quoting from *People* v. *Green* (1980) 27 Cal.3d 1, 25 [164 Cal.Rptr. 1, 609 P.2d 468].)

The prosecution argued that the introduction of the morphine evidence would be unduly prejudicial to its case. It asserted further that the evidence had little if any probative value: the expert testimony would not establish that merely because morphine was present in the victim's urine, he was under its influence at the time of his death.

The record of the court's ruling on this evidence, unfortunately, is unclear and confusing. The bulk of the discussions and arguments reported in the record are directed to the admissibility of proffered defense evidence that the victim was under the influence of a drug when he violently resisted arrest in 1979. (See pt. II, *post.*) Evidence concerning the presence of morphine in the victim at the time of his death in 1981 was initially offered only to provide a foundation for admission of evidence of drug involvement in his 1979 arrest. The attention of counsel and the court was therefore never clearly focused on the morphine evidence now at issue.

In connection with its section 352 ruling that the prejudicial effect of the evidence of the victim's condition *during the 1979 arrest* outweighed its probative value, the court also ruled that evidence concerning the presence of morphine in the victim's system *at the time of death* would be excluded.[1] Although the court clearly weighed the proper factors with respect to the former evidence, there is no indication in the record that it similarly considered these factors with respect to the latter. In fact, the record fails to reveal on what basis the court excluded the evidence now at issue. The failure of the court to discharge its statutory duty to weigh for the record the probative value of this evidence against its potential prejudice was error. (*People* v. *Green, supra,* 27 Cal.3d at p. 24.)

In any event, the probative value of the evidence here was significant, while its prejudicial effect was minimal at best. Defendant's sole theory to support an acquittal was that he acted in self-defense in response to the victim's irrational behavior. No evidence was presented to corroborate defendant's version of the incident. Defendant therefore attempted to support his perception of the victim's irrational state of mind by introducing evidence from which the jury could infer the victim was under the influence of a narcotic. Contrary to respondent's assertions, the fact that the evidence was not conclusive on this point did not negate its probative value to de-

---

[1]The Attorney General erroneously contends that the court considered the morphine evidence and ruled that its "probative value would be outweighed by any prejudicial aspect." Although the record is admittedly confusing, a close reading reveals that the quoted ruling referred only to the evidence relating to the victim's involvement with heroin at the time of the 1979 arrest. The focus of the court was solely on how it would limit the officer's testimony concerning that arrest, and not on the admissibility of evidence concerning the victim's condition at the time of death. The section 352 ruling on the former evidence cannot be construed as a simultaneous ruling on the evidence at issue here.

fendant's self-defense claim. Moreover, the excluded evidence also impeached the credibility of the prosecution's primary witness, Mrs. Jurado, who had testified that the victim had not used narcotics in the 24 hours immediately prior to his death.

The Attorney General offers no explanation of how this evidence would have prejudiced the prosecution.[2] His only argument appears to be that the matter at issue added nothing to the evidence already before the jury. A pathologist did testify for the prosecution that several injection marks on the victim's body were recent, i.e., within the last week. He testified further, however, that all the marks were more than 24 hours old. The evidence defendant sought to introduce would have directly contradicted this prosecution evidence and shown that the presence of morphine in the victim's urine indicated heroin use within the last 24 hours. Thus, according to the prosecution's theory the victim had not injected heroin within the last 24 hours; by contrast, according to defendant's proffered evidence the victim had in fact used heroin within 24 hours of his death.

The only possible prejudice to the prosecution was that the jury might have improperly used the excluded evidence to infer that the victim was a heroin addict. The fact of victim's past heroin use was, however, already before the jury. First, the victim's wife testified he had used heroin in the past. Second, the testimony of the pathologist revealed that the scar tissue around the victim's veins resulted from extensive prior nonmedical injections and that several of the marks were recent, i.e., less than one week old. The possibility that the victim was under the influence of a narcotic at the time of his death was thus unlikely to further prejudice the jurors against the prosecution.

■ We first reiterate, from a unanimous opinion of this court, the "[w]ise advice for trial judges in criminal cases (and for prosecuting attorneys) [that] was articulated long ago: 'Questions as to the admissibility of evidence frequently arise, and in the hurry of a . . . trial the best Judge may err. . . . [W]henever the evidence proposed by the defense is not plainly inadmissible, it is better to let it go in, since, in nine cases out of ten, a single equivocal fact, of doubtful bearing upon the case, would have no effect upon the judgment of the jurors, who are usually disposed to pass . . . upon the general merits. . . .' In other words, trial judges in criminal cases should give a defendant the benefit of any reasonable doubt when passing on the admissibility of evidence as well as in determining its

---

[2]In fact, at one point during arguments on the evidentiary issues, counsel for the prosecution stated that he had "absolutely no problem with testimony coming in that he [the victim] had morphine in his system."

weight." (*People* v. *Murphy* (1963) 59 Cal.2d 818, 829 [31 Cal.Rptr. 306, 382 P.2d 346].)

■ Although we recognize that the prosecution is accorded protection under Evidence Code section 352, similar to that of the defense, from the use of prejudicial evidence with little probative value, the purported prejudice to the prosecution cannot be based on mere speculation and conjecture. (*People* v. *Love* (1977) 75 Cal.App.3d 928, 937 [142 Cal.Rptr. 532].) Moreover, "Evidence that is relevant to the prime theory of the defense cannot be excluded in wholesale fashion merely because the trial would be simpler without it." (*People* v. *McDonald* (1984) 37 Cal.3d 351, 372 [208 Cal.Rptr. 236, 690 P.2d 709].)

■ "The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against . . . [one party] as an individual and which has very little effect on the issues." (*People* v. *Yu* (1983) 143 Cal.App.3d 358, 377 [191 Cal.Rptr. 859].) Thus, the balancing process mandated by section 352 requires "consideration of the relationship between the evidence and the relevant inferences to be drawn from it, whether the evidence is relevant to the main or only a collateral issue, and the necessity of the evidence to the proponent's case as well as the reasons recited in section 352 for exclusion." (*Kessler* v. *Gray* (1978) 77 Cal.App.3d 284, 291 [143 Cal.Rptr. 496].) ■ In light of the evidence already before the jury, it is difficult to see how the admission of the morphine evidence would have further prejudiced them against the victim or the prosecution. In these circumstances, the court's exclusion of defendant's proffered evidence constituted an abuse of its discretion. (*People* v. *Cardenas* (1982) 31 Cal.3d 897, 904-905 [184 Cal.Rptr. 165, 647 P.2d 569].)

We must next determine whether the error was prejudicial. As noted, the evidence in question was directed only to defendant's claim of self-defense. Defendant's offer of proof did not, however, include any proposed testimony concerning the effects of heroin, or the level of morphine contained in the victim's urine, or the significance of any particular level of morphine. Although the excluded evidence would have allowed the jury to infer the victim was under the influence of heroin, this inference would have done little towards corroborating defendant's testimony that the victim was, as a result, irrational and aggressive. In fact, the only testimony as to how the victim behaved when under the influence of heroin was that of his wife, and she stated unequivocally that when he was under the influence he was never violent or aggressive but instead was prone to "sleep a lot."

Moreover, the excluded evidence was offered in support of a claim of irrationality that was itself weak and unpersuasive. The sole direct evidence

that the victim was behaving "irrationally" was the following brief, leading, and self-serving exchange on redirect examination of defendant:

"Q. [by defense counsel]. Did you feel that Mr. Jurado was acting rationally or irrationally? A. Irrationally.

"Q. Did you feel he might have been under the influence of some sort of drug? A. Yes . . . ."

Finally, there was significant evidence introduced against defendant that belied his claim of self-defense: he admitted to the police that he shot the victim without hesitation four times just "like Wyatt Earp"; the testimony of several witnesses contradicted defendant's assertion that the victim threatened him; and no weapon was found on or near the victim's body.

Under these circumstances, we cannot say it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

## II

▌ Defendant next contends the court erred in excluding evidence that the victim was under the influence of heroin during his arrest in 1979. He cites no authority in support of the claim. The apparent purpose of this defense evidence was to establish the victim's tendency to violence when under the influence. The court ruled that the minimal probative value of the evidence was outweighed by its prejudicial effect.

Defendant sought to call as a witness the officer who had arrested the victim in 1979. The prosecution objected on the ground of section 352. Defendant therefore made an offer of proof that the officer would testify that after observing an apparent heroin sale by Jurado in 1979, he attempted to make an arrest. Jurado resisted violently, but was eventually subdued. He was charged with possession of heroin, possession of heroin for sale, and resisting arrest. At the time of the arrest, he was found to be under the influence of heroin. The prosecution elaborated on these facts by eliciting testimony from the officer, outside of the presence of the jury, that the victim attempted to avoid being charged with possession by throwing the heroin away before his arrest.

The court ruled that the officer's testimony would be limited to questions concerning the fact that Jurado had violently resisted arrest; the court based its admission of this evidence concerning the victim's character on Evidence

Code section 1103.[3] The court precluded any reference to the involvement of heroin in the incident, however, reasoning that the limited probative value of that evidence was outweighed by its prejudicial effect. In this respect the court correctly noted that the victim's behavior could be explained by circumstances other than the fact he was under the influence of heroin: the court recognized that the prospect of being arrested while in possession of heroin was an entirely rational explanation for Jurado's violent reaction to the officer's efforts. The circumstances of Jurado's 1979 arrest and his 1981 death were thus almost entirely lacking in similarity. In addition, defendant failed to offer any other evidence to support his theory that the victim was violent when under the influence; in fact, as noted above, Mrs. Jurado testified that her husband's reaction to heroin was to sleep. For these reasons the victim's condition at the time of the 1979 arrest was of little if any probative value in supporting the claim of self-defense.

Furthermore, as the prosecution noted, if defendant were allowed to introduce such evidence the prosecution would be compelled in turn to introduce evidence as to the charges on which the victim was arrested in 1979 and their disposition, and to provide an alternative explanation for his actions. Such evidence would be detrimental to the prosecution in the same manner in which evidence of prior offenses is prejudicial when introduced against a defendant. (See *People* v. *Thomas* (1978) 20 Cal.3d 457, 464 [143 Cal.Rptr. 215, 573 P.2d 433]; *People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1].)

█ "It has long been recognized that where self-defense is raised in a homicide case, evidence of the aggressive and violent character of the victim is admissible." (*People* v. *Rowland* (1968) 262 Cal.App.2d 790, 797 [69 Cal.Rptr. 269]; see also *People* v. *Shoemaker* (1982) 135 Cal.App.3d 442, 446-447 [185 Cal.Rptr. 370].) Under Evidence Code section 1103, such character traits can be shown by evidence of specific acts of the victim on third persons as well as by general reputation evidence. (*People* v. *Thomas* (1969) 269 Cal.App.2d 327, 328 [74 Cal.Rptr. 617].) █ The court therefore properly admitted evidence concerning Jurado's violent reaction to the officer in 1979, and the Attorney General does not question this ruling. The admission of such character evidence, however, is not without bounds, but is subject to the dictates of Evidence Code section 352. The court properly recognized this limitation by tailoring its ruling to exclude

---

[3]Section 1103, subdivision (a), provides in pertinent part: "In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if such evidence is: [¶] . . . [o]ffered by the defendant to prove conduct of the victim in conformity with such character or trait of character."

those aspects of the officer's testimony, the probative value of which was outweighed by their prejudicial effect.

Section 352 directs "the trial judge to strike a careful balance between the probative value of the evidence and the danger of prejudice, confusion and undue time consumption. That section requires that the danger of these evils substantially outweigh the probative value of the evidence. This balance is particularly delicate and critical where what is at stake is a criminal defendant's liberty. Nonetheless, it cannot be said that the trial judge's ruling on this evidence, of which the probative value was slight and the chance of prejudice and confusion substantial, struck an improper balance and thereby constituted an abuse of discretion." (*People* v. *Lavergne* (1971) 4 Cal.3d 735, 744 [94 Cal.Rptr. 405, 484 P.2d 77].) The conclusion reached by the court in *Lavergne* is similarly appropriate to this case.

## III

■ Defendant next submits that the court erred in its modification of the standard CALJIC instruction on deliberate and premeditated murder. The portion of CALJIC No. 8.20 at issue, with the words that were stricken by the court appearing in brackets, is as follows: "If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection [and not under a sudden heat of passion] or other condition precluding the idea of deliberation, it is murder of the first degree." (CALJIC No. 8.20 (4th ed. 1979).)

The court apparently struck the phrase, "and not under a sudden heat of passion," because heat of passion was not pertinent to defendant's self-defense theory. When it struck that phrase, however, the court also should have eliminated the following phrase, "or other condition precluding the idea of deliberation . . . ." The Attorney General concedes that the instruction as thus partially modified and read to the jury was erroneous.

The court, however, also gave correct instructions explaining the meaning of premeditation and deliberation. It properly advised the jury pursuant to CALJIC No. 8.20 that "[t]he word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. The word 'premeditated' means considered beforehand." The court further instructed the jury that "[t]he law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated. The time will vary with different individuals and under varying circumstances. [¶]

The true test is not the duration of time, but rather the extent of the reflection. A cold, calculated judgment and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it include an intent to kill, is not such deliberation and premeditation as will fix an unlawful killing as murder of the first degree. [¶] To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he decides to and does kill."[4]

Defendant argues that the erroneous instruction effectively charged the jury that "first degree murder consisted of an intent to kill which is either deliberate or *not* deliberate." Yet "[t]he absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole." (*People* v. *Galloway* (1979) 100 Cal.App.3d 551, 567-568 [160 Cal.Rptr. 914].) The instructions quoted above make it clear that deliberation, as well as premeditation, is a key element of first degree murder. Moreover, in their arguments counsel stressed the necessity for the jury to focus on the elements of premeditation and deliberation in considering whether defendant was guilty of first degree murder. In these circumstances it is difficult to conceive how the jury could have been misled into believing that mere intent to kill would suffice to find first degree murder. (See *People* v. *Germany* (1974) 42 Cal.App.3d 414, 419 [116 Cal.Rptr. 841].)

Considering all the instructions together, the verdict cannot reasonably be deemed to have been the result of a misconception of the law. (See *People* v. *Honeycutt* (1946) 29 Cal.2d 52, 62 [172 P.2d 698].) Under these circumstances, we conclude that the instructional error was harmless. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

IV

Defendant contends his motions for dismissal and mistrial were improperly denied after it was discovered that the prosecution had inadvertently failed to timely disclose substantial material evidence favorable to him. The material consisted of several police reports of preliminary interviews with Mrs. Jurado conducted at the scene on the night of her husband's death. Defendant asserts that the reports tended to impeach her testimony at trial.

---

[4]After several hours of deliberation, the jury asked for the rereading of certain instructions, including those on self-defense, intent to kill, malice aforethought, "unlawful," and premeditation and deliberation. The requested instructions covered a broad range of material; for this reason, the court suggested and counsel agreed that the court would give the written instructions to the jury rather than to reread them. The material in the text is quoted directly from the written instructions.

In *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194], the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material . . . irrespective of the good faith or the bad faith of the prosecution." (*Id.* at p. 87 [10 L.Ed.2d at p. 218].) ■ We have imposed a stricter duty on prosecutors in this state, by requiring them to disclose substantial material evidence favorable to the accused without request. (*People* v. *Ruthford* (1975) 14 Cal.3d 399, 405-406 [121 Cal.Rptr. 261, 534 P.2d 1341].) This duty applies not only to evidence that bears directly on the question of an accused's guilt, but also to evidence relating to the credibility of prosecution witnesses. (*Id.* at p. 407.) Respondent concedes that the reports in dispute here are within the scope of materials that the prosecution had a duty to disclose.

We apply these rules to the facts at hand. After counsel completed closing arguments and the jury was instructed, but before the commencement of deliberations, defense counsel discovered that the prosecution had failed to disclose the above-discussed police reports of interviews with Mrs. Jurado. Testimony was then taken outside the presence of the jury to establish that the prosecution's failure to disclose the materials had been inadvertent rather than intentional. According to local practice, a standing discovery order directed that all police reports be provided to counsel. Apparently the practice of the officers was to provide the reports to the district attorney who then made the materials available to defense counsel. The officer's file here contained several reports that had not been forwarded to the district attorney because of an oversight by the officer; the materials had therefore never been made available to defense counsel.

Defense counsel argued that the statements attributed to Mrs. Jurado in the reports were inconsistent with her testimony in two significant respects. Deputy Sheriff Violet Costanza had conducted a preliminary interview with her shortly after the killing; at that time, Mrs. Jurado stated that she went to look over her back fence because she heard loud voices. Her trial testimony was that she heard no argument or loud voices and had gone to the fence to help direct her husband to the manager's house. Another reported interview with Mrs. Jurado conducted by Officer Wright revealed that her husband's jacket was zipped when he left home, but unzipped when she discovered his body.

The court ruled that neither dismissal nor a mistrial was warranted as a sanction for the prosecution's failure to disclose this evidence. Instead, the court explained the situation to the jury and allowed defense counsel to reopen his case to present the additional evidence. Pursuant to stipulation the jury was told that were Officer Wright called to the stand, he would

testify that Mrs. Jurado informed him that the victim's jacket was zipped when he left home but unzipped when she discovered the body. Deputy Costanza testified to the contents of her report of the interview. Defense counsel chose not to recall Mrs. Jurado to testify about the inconsistency between her earlier trial testimony and this report. Counsel argued that recalling her would not remedy the prosecution's misconduct because she had already heard the closing arguments, would be alerted to the issue, and could accordingly reform her earlier testimony. The court rejected this reasoning, but allowed both counsel to present additional jury argument directed to the new evidence.

Defendant contends this procedure failed to cure the prejudice. ■■ As we observed in *People* v. *Zamora* (1980) 28 Cal.3d 88, 99 [167 Cal.Rptr. 573, 615 P.2d 1361], courts enjoy a large measure of discretion in determining the appropriate sanction that should be imposed when the prosecution suppresses discoverable evidence: "Not every suppression of evidence requires dismissal of charges . . . . The remedies to be applied need be only those required to assure the defendant a fair trial." (*Ibid.*, citing *Brown* v. *Municipal Court* (1978) 86 Cal.App.3d 357, 363 [150 Cal.Rptr. 216].)

■■ We agree with the trial court that the circumstances presented here did not warrant the sanctions of dismissal or mistrial. The situation is distinguishable from most cases of suppression by the prosecution in which the existence of the suppressed evidence is not discovered by the defendant until after the trial is over and a verdict reached. (See, e.g., *People* v. *Ruthford, supra,* 14 Cal.3d 399; *People* v. *Shaparnis* (1983) 147 Cal.App.3d 190, 196 [195 Cal.Rptr. 39]; *People* v. *Partlow* (1978) 84 Cal.App.3d 540, 556 [148 Cal.Rptr. 744].) In the case at bar, defendant discovered the additional evidence before a verdict had been reached, indeed before the jury's deliberations had begun. The court was therefore able to allow defendant to present the additional evidence to the jury in a timely manner, so that it could be considered in their deliberations.

Although we agree with defendant that the prosecution improperly failed to disclose the evidence, he has not demonstrated that the procedure used by the court to remedy the misconduct resulted in prejudice. Indeed, it appears to have been appropriate under the circumstances. For these reasons we cannot conclude that the suppression of the evidence deprived defendant of a fair trial, and instead must hold that in light of the remedial procedure used by the court any error was harmless beyond a reasonable doubt. (*People* v. *Ruthford, supra,* 14 Cal.3d at p. 410.)

V

Finally, defendant maintains that the evidence was insufficient to support the jury's finding that the murder was committed with premeditation and

deliberation. ■■■ Although the case is close, we are mindful that " " "[t]he test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt." ' " (*People* v. *Arcega* (1982) 32 Cal.3d 504, 518 [186 Cal.Rptr. 94, 651 P.2d 338].) "Evidence, to be 'substantial' must be 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value.' " (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Moreover, in making this determination, we are required to "review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence . . . from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People* v. *Green* (1980) 27 Cal.3d 1, 55 [164 Cal.Rptr. 1, 609 P.2d 468].)

■■■ "The type of evidence which this court has found sufficient to sustain a finding of premeditation and deliberation falls into three basic categories: (1) facts about how and what defendant did *prior* to the actual killing which show that defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of a 'pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' [citation]; (3) facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2).

"Analysis of the cases will show that this court sustains verdicts of first degree murder typically when there is evidence of all three types and otherwise requires at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3)." (*People* v. *Anderson* (1968) 70 Cal.2d 15, 26-27 [73 Cal.Rptr. 550, 447 P.2d 942].) ■■■ Our review of the evidence leads to a conclusion that although no single factor is supported by "extremely strong" evidence, there is evidence of all three categories from which the jury could reasonably conclude the murder here was deliberate and premeditated.

Several of defendant's actions constituted evidence of planning activity directed to and intended to result in the killing. After confronting Jurado, defendant returned to his trailer and obtained a loaded weapon. Although

safely in his trailer home, he left it deliberately and proceeded, weapon in hand, to seek out the victim. He walked through the trailer park, out onto the street in front of the property, and then back into the trailer park past his own trailer, a place of safety. During this period he was actively looking for Jurado and shouting for him to come out. According to defendant's own testimony, when he saw Jurado he shot him four times with little if any hesitation.[5]

Defendant maintained that his actions in searching out the victim did not result from a deliberate predetermined intent to kill Jurado but only from a desire to frighten him away from the property. The jury apparently chose to reject that explanation. A reasonable trier of fact could have accepted the evidence reviewed above as facts supporting an inference of "planning activity." It is settled law that the reflection necessary to establish premeditation and deliberation is not measured by duration of time: "Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly, but the express requirement for a concurrence of deliberation and premeditation excludes from murder of the first degree those homicides . . . which are the result of mere unconsidered or rash impulse hastily executed." (*People* v. *Thomas* (1945) 25 Cal.2d 880, 900-901 [156 P.2d 7].) Thus, the mere fact that defendant may have had little time to "deliberate" does not require a conclusion that he could not have done so.

Motive was demonstrated by defendant's own testimony and statements to the police about his first encounter with the victim. He testified that Jurado accosted him, made unfounded accusations, and threatened him. Although the prosecutor stated in his closing argument that he was unable to conceive of a motive for the killing, the jury was free to infer from the evidence presented that defendant did have a motive. Although, as in many senseless killings of this type, the motivation was unreasonable, the jury could nevertheless infer that defendant's motive was to retaliate against Jurado's earlier accusatory behavior.[6]

Finally, we look to the manner of killing. The evidence shows that defendant shot the victim at close range four times. Defendant's statements to

---

[5]"Of course, use of a deadly weapon is not always evidence of a plan to kill[]" (*People* v. *Alcala* (1984) 36 Cal.3d 604, 626 [205 Cal.Rptr. 775, 685 P.2d 1126]), but obtaining such a weapon in advance of a killing is one fact that has been held to support an inference of planning activity (*ibid.; People* v. *Haskett* (1982) 30 Cal.3d 841, 850 [180 Cal.Rptr. 640, 640 P.2d 776]).

[6]One of the aspects of "motive" evidence is the prior relationship of the defendant to the victim. In the present case it was undisputed that defendant had never met Jurado before the night of the shooting. Defendant cites this fact in support of his contention that there was *no* evidence of motive. If, however, the jury believed defendant's version of the incident, defendant and the victim encountered each other twice that night. The first encounter could therefore provide a basis for a "prior" relationship between defendant and the victim from which the jury could draw an inference of motive.

the officers immediately after the shooting disclosed that he did not hesitate to fire but shot as soon as he saw the victim. His statements further indicated that he fired once and began to walk toward the victim as he continued to fire his weapon: defendant stated he "went just like Wyatt Earp and shot him." The fact that defendant shot his victim four times at close range could well support an inference by the jury that the manner of killing was "particular and exacting."

As required by settled law, we have reviewed the evidence in the light most favorable to the judgment. That review leads firmly to the conclusion that there was substantial evidence from which a reasonable jury could have concluded that the killing was murder of the first degree.

The judgment is affirmed.

Reynoso, J., Grodin, J., and Lucas, J., concurred.

**KAUS, J.**—I respectfully dissent. Basically—contrary to the majority's conclusion in part II—I believe that the trial court erred in suppressing evidence that the victim was under the influence of heroin during his violent 1979 encounter with the police. This error compounded the admitted error—see part I of the majority opinion—in keeping out evidence that he had ingested heroin within 24 hours of his death.

Before explaining the reasons for these conclusions, I think it must be emphasized that whatever errors were committed did not—as the majority seems to suggest—merely affect defendant's claim of self-defense which, if accepted, would have resulted in an acquittal. Under all the circumstances such a result was, perhaps, too much to expect even in the absence of error. The case was, however, also submitted to the jury on the theory of "imperfect self-defense"—that defendant harbored an honest but unreasonable belief in imminent peril. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 674-680 [160 Cal.Rptr. 84, 603 P.2d 1].)[1] That "defense," if accepted, would have led to a conviction of voluntary manslaughter. Thus, in evaluating the likelihood of prejudice, we must consider not only the possibility that the admission of the erroneously excluded evidence could have resulted in an acquittal, but also the more realistic prospect that the jury—had it had all

---

[1] The jury was instructed: "The crime of voluntary manslaughter is the unlawful killing of a human being without malice aforethought when there is an intent to kill. [¶] There is no malice aforethought if the killing occurred in the honest but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury. [¶] In order to prove the commission of the crime of voluntary manslaughter, each of the following elements must be proved: [¶] 1. That a human being was killed, [¶] 2. That the killing was unlawful, and [¶] 3. That the killing was done with the intent to kill."

the evidence supportive of defendant's version of the incident before it—might have had a reasonable doubt so as to reduce the offense to manslaughter. This "lesser offense" option clearly makes it much more likely that an erroneous exclusion of favorable defense evidence may have affected the outcome.

Now, to the errors themselves.

The majority agrees with defendant that the evidence concerning morphine in the victim's urine was erroneously excluded. That evidence admittedly would have permitted the jury to infer that the victim was under the influence of a narcotic at the time of the shooting. As the majority points out, the fact that the evidence was not conclusive does not negate its probative value. Moreover, it impeached Mrs. Jurado who had testified that the victim had not used narcotics in the 24 hours before his death.

Mrs. Jurado also testified, however, that when the victim was under the influence he "slept a lot"—implying that even such evidence of recent narcotics usage as found its way into the record, did not support defendant's claim of irrational and threatening conduct on the part of the victim.

It seems clear to me that defendant was entitled to overcome the implication of Mrs. Jurado's testimony with evidence that on at least one fairly recent occasion the victim did not sleep while under the influence of heroin, but behaved quite violently. (Evid. Code, § 1103.) Standing alone, the 1979 evidence is admittedly of minimal value to prove he was impetuous or highly strung, even when under the influence, but when considered in connection with the evidence—both admitted and improperly excluded—concerning the time just before the homicide, it obviously gains considerable force.

I would reverse or, minimally, give the People the option of retrying defendant on the murder charge or of accepting a reduction to voluntary manslaughter.

Bird, C. J., and Broussard, J., concurred.

Appellant's petition for a rehearing was denied September 25, 1985. Bird, C. J., and Broussard, J., were of the opinion that the petition should be granted.