Filed 10/23/20  P. v. Vansickle CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>AARON VANSICKLE,<br><br>Defendant and Appellant. | A156274<br><br>(Contra Costa County<br>Super. Ct. No. 5-181285-8) |

Aaron Vansickle appeals his conviction for residential burglary under Penal Code section 459,[1] asserting that the trial court erred in admitting evidence of his co-defendant's prior burglary conviction; in denying his motion to sever his trial from his co-defendant's; in excluding evidence of his spontaneous exculpatory statement; and in giving two jury instructions.  Because we conclude his contentions lack merit, we affirm.

---

[1] Undesignated statutory references are to the Penal Code.

1

## BACKGROUND

### A.

Two days after a fire badly damaged a house in Walnut Creek, a neighbor called police late at night and reported hearing a window breaking at the house.

Police caught Vansickle's co-defendant, Travis Henry, as he emerged from the garage through a broken window. Henry was carrying a backpack containing tools, flashlights, cell phones, and drug paraphernalia. In his pockets police found jewelry and other items taken from the house. He said that he and Vansickle had taken public transit from San Francisco to Walnut Creek.

The officers then searched the house with a police dog. They announced themselves loudly and warned that they were going to release the dog and that the dog may bite. In a bedroom, they found evidence that someone had rummaged through dresser drawers containing jewelry.

In another bedroom, they found Vansickle lying in a pile of clothes, under a blanket. The floor, clothes, and blanket were sopping wet. Debris, ash, and insulation had fallen on most surfaces of the bedroom. When the officers yelled at Vansickle to show his hands, he reacted slowly and kept his eyes closed, as if he'd been sleeping. The dog bit Vansickle, which caused him to scream, and he exclaimed that he was "just looking for a place to sleep." He was wearing a glove on one hand and had a backpack that contained jewelry and other items from the house. He also had a headlamp, mask, and cell phone.

**B.**

Over both defendants' objection, the trial court granted the prosecution's motion to admit evidence concerning a prior burglary conviction Henry suffered.  The court also denied Vansickle's motion to sever his trial from Henry's.  In addition, the court granted the prosecution's motion to exclude a portion of an officer's body camera footage depicting Vansickle's cries of pain and statements in the immediate aftermath of the dog bite.

At trial, Vansickle argued that the prosecution failed to meet its burden of proving the elements of burglary because he went to the house to find a place to sleep and had no intent to steal anything when he first entered the house.  (See, e.g., *People v. Holt* (1997) 15 Cal.4th 619, 669 (*Holt*) ["The People must establish that a burglary defendant entered the premises with the intent to commit a felony or theft."].)

**DISCUSSION**

**A.**

***Co-defendant's Prior Uncharged Offense***

Vansickle contends that his conviction must be reversed because the trial court erred in admitting his co-defendant's prior burglary conviction.  Applying the abuse of discretion standard (*People v. Harris* (2013) 57 Cal.4th 804, 841 (*Harris*)), we conclude the trial court did not err.

The prosecution sought admission of Henry's prior burglary offense as evidence of his intent to commit a theft when he broke into the Walnut Creek house.  The prosecution's motion alleged that in 2016 Henry entered the garage of a residential apartment building in San Francisco with two accomplices and removed a bicycle locked to the

3

wall by unscrewing a metal bracket.  The police arrested Henry outside the building shortly thereafter with the bicycle as well as burglary tools in his possession.

Evidence that a person committed a crime is generally inadmissible to prove that the person has a propensity or disposition to engage in criminal conduct.  (Evid. Code, § 1101, subd. (a).)  But evidence of uncharged crimes may be admissible to prove other material facts, such as a person's identity or intent.  (*Harris*, *supra*, 57 Cal.4th at p. 841; Evid. Code, § 1101, subd. (b).)

Here, evidence of Henry's prior burglary offense was indisputably material on the question of his intent at the time he entered the Walnut Creek house because it was the central dispute at trial.  (See *People v. Robbins* (1988) 45 Cal.3d 867, 879 (*Robbins*).)  Our Supreme Court has explained " 'that if a person acts similarly in similar situations, he probably harbors the same intent in each instance' [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent." (*Id*.)

Vansickle contends that the prior offense was too dissimilar to serve as evidence of Henry's intent in the present case.  However, compared to other permissible uses of prior acts, only the " 'least degree of similarity' " between the prior act and the charged offense is required to prove intent.  (*Harris*, *supra*, 57 Cal.4th at p. 841.)  "[T]o be admissible to prove intent, the uncharged conduct must be sufficiently similar" to support an inference that the defendant likely had the same intent in both instances.  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

4

The facts underlying Henry's prior burglary conviction were sufficiently similar to prove intent here. Although the two incidents occurred in different locations, and one involved an apartment building while the other involved an unoccupied house, both involved Henry's unauthorized entry into a residential garage while in possession of burglary tools. In both instances, Henry possessed property he had taken from the dwelling when he was apprehended; he took a bicycle in the San Francisco incident, and he took a brooch and bracelet in this case. If the jury concluded Henry had an intent to commit theft in the San Francisco burglary, it could reasonably conclude that he similarly intended to commit theft when he broke into the Walnut Creek house. (See, e.g., *People v. Rocha* (2013) 221 Cal.App.4th 1385, 1395-1396 [two burglary offenses sufficiently similar for purposes of intent where both involved nonconsensual entry into residential garages belonging to strangers, although there were also distinctions between the incidents].) The trial court's decision to admit the evidence was not an abuse of discretion merely because the two offenses were not identical or the similarities were not distinctive. (See *Harris*, *supra*, 57 Cal.4th at p. 842 [other burglary offense was relevant to intent even though "the crimes were not identical"].)

Finally, we disagree with Vansickle's contention that the trial court abused its discretion in declining to exclude evidence of Henry's prior burglary conviction because the evidence was more prejudicial than probative. (See Evid. Code, § 352.) The facts of the San Francisco burglary were not particularly inflammatory. (See *Harris*, *supra*, 57 Cal.4th at p. 842.) Nor was there a danger that the jury would be prejudiced against Vansickle for associating with a criminal. The trial

5

court instructed the jury that it may consider the evidence for the limited purpose of deciding whether Henry acted with intent to commit theft, that it could not consider this evidence for any other purpose, and that it may not "conclude from this evidence that the defendant has a bad character or is disposed to commit crime." The court further instructed that the jury "must separately consider the evidence as it applies to each defendant" and that it "must decide each charge for each defendant separately." We presume the jury followed the instructions. (*Harris*, *supra*, 57 Cal.4th at p. 842.)

## B.

### *Severance Motion*

Vansickle asserts that the trial court erred in denying his motion to sever his case from his co-defendant's because his prejudicial association with Henry, a convicted burglar, undermined his defense. We find no abuse of discretion. (See *People v. Sanchez* (2016) 63 Cal.4th 411, 464 (*Sanchez*) ["We review the court's denial of severance for abuse of discretion based on the facts as of the time of the ruling."].)

When two defendants are jointly charged with a crime, section 1098 states "they must be tried jointly, unless the court order[s] separate trials." (See *People v. Coffman & Marlow* (2004) 34 Cal.4th 1, 40 (*Coffman & Marlow*) [defendants charged with common crimes involving common events and victims present "a ' "classic case' " for a joint trial"].) The court has discretion to order separate trials if there may be prejudice to a defendant, such as guilt-by-association with a co-defendant. (*Sanchez*, *supra*, 63 Cal.4th at p. 464.) As our Supreme Court has explained, "[p]rejudicial association might exist if 'the characteristics or culpability of one or more defendants [is] such that

6

the jury will find the remaining defendants guilty simply because of their association with a reprehensible person, rather than assessing each defendant's individual guilt of the crimes at issue. ' " (*Ibid*.)

Here, the trial court acted within its discretion. Henry's prior burglary conviction was unlikely to cause the jury to convict Vansickle based solely on his association with Henry. As noted, the circumstances of Henry's prior conviction – involving theft of a bicycle from a residential garage – were not especially inflammatory. Vansickle did not dispute that he broke into the house or that he possessed stolen property. The trial court could thus reasonably conclude that the jury was unlikely to find Vansickle guilty by association, given his direct role. (See, e.g., *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 383 (*Bryant, Smith and Wheeler*) [concluding jury was unlikely to have found the defendants guilty by association where there was "ample evidence" of each defendant's role in the crimes.) Moreover, the court further limited the risk of prejudice by instructing the jury that Henry's prior conviction applied to Henry alone. (See *Coffman & Marlow, supra*, 34 Cal.4th at p. 40; *Bryant, Smith and Wheeler, supra*, 60 Cal.4th at p. 381 ["Jurors are expected to follow instructions in limiting evidence to its proper function[.]"].)

Neither do we agree with Vansickle's contention that even if the court properly denied the pre-trial motion, the trial that actually resulted was grossly unfair. (See, e.g., *People v. Hajek & Vo* (2014) 58 Cal.4th 1144, 1172-1173 (*Hajek & Vo*), abrogated on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192.) Vansickle incorrectly suggests that severance was required merely because evidence that would have been inadmissible had he been tried separately was

introduced in his joint trial with Henry.  As our Supreme Court has explained, "the issue is not whether a theoretical separate trial of one defendant would have been different, but whether the joint trial that actually occurred was in some manner prejudicially unfair or unreliable." (*Bryant, Smith and Wheeler*, 60 Cal.4th at p. 381.)

Finally, Vansickle suggests the prosecutor confused the jury by failing to "distinguish the evidence as to each defendant in any manner."  We have reviewed the record and disagree with Vansickle's characterization.  The prosecutor presented the jury with an independent basis to conclude that Vansickle was guilty, apart from his association with Henry or any propensity to steal, and Vansickle's trial was not unfair, let alone grossly unfair.  (See *Hajek & Vo*, *supra*, 58 Cal.4th at p. 1174.)

## C.

### *Exclusion of video of spontaneous exculpatory statement*

Vansickle contends that the trial court abused its discretion under Evidence Code section 352 in excluding body camera footage containing an exculpatory statement he made while screaming and crying in pain from the dog bite.  We disagree.

In the trial court, Vansickle sought admission of video footage depicting his statements after he was bitten by a police dog.  The 40-second video clip shows a close-up image of Vansickle's arm covered in blood, while he is heard crying and screaming and the dog barks repeatedly.  Near the end of the clip, Vansickle can be heard saying, "I was just looking for a place to sleep, man."  The court gave Vansickle the opportunity to edit the video to attempt to reduce any prejudicial effect, viewed the edited video clip, and also considered whether to

8

admit the audio portion of the same clip without the visual. Vansickle acknowledged that the footage was "quite graphic" and "could be somewhat disturbing and emotional" but argued that the statement is more credible when viewed as an impulsive reaction to the pain and shock of the dog bite.

The court excluded both the video and audio clips, explaining that hearing the crying, "loud barking[,] and continual screaming" was likely to have a "prejudicial and confusing effect" that "outweighs the probative value" of the evidence under Evidence Code section 352. The court also noted that the recording would improperly appeal to the jury's sympathies. However, the court allowed one of the officers to testify about what happened, and the officer explained that after the police dog bit him, Vansickle was crying, distraught, and upset. The officer initially testified that Vansickle then stated he was "trying to sleep," but clarified after reviewing the body camera footage that Vansickle said he was "just looking for a place to sleep."

After reviewing the video and audio clips, we find no abuse of discretion. A trial court may exclude evidence that could confuse the jury or create an emotional bias against a party. (See Evid. Code, § 352; see also *People v. Wright* (1985) 39 Cal.3d 576, 585 (*Wright*) ["undue prejudice" refers to " 'evidence which uniquely tends to evoke an emotional bias against . . . [one party] as an individual and which has very little effect on the issues' "].) Although the evidence was material and probative of Vansickle's intent when he entered the house, it was also "graphic," "disturbing," and "emotional," as Vansickle's counsel acknowledged below. The court reasonably concluded that hearing Vansickle's screams and seeing his bloody arm

9

could confuse the jury about the circumstances of the arrest and improperly provoke sympathy for Vansickle or prejudice against the prosecution, considerations which substantially outweighed the probative value of the evidence. (See *Wright*, *supra*, 39 Cal.3d at p. 585 ["the prosecution is accorded protection under Evidence Code section 352, similar to that of the defense, from the use of prejudicial evidence with little probative value"]; see also *People v. Wall* (2017) 3 Cal.5th 1048, 1069 ["A trial court's decision to admit or exclude evidence . . . will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice."].)

Neither did the exclusion of the evidence violate Vansickle's constitutional right to present his defense. Although hearing the audio clip would have provided additional evidence for the jury to assess the sincerity of the statement, as noted, the trial court permitted Vansickle to introduce undisputed evidence concerning the fact of his statement as well as its context. During closing argument, defense counsel argued that Vansickle made the statement "in the moments after he was bitten by the dog when he was under the stress of the situation, he was crying, he was emotional, he was distraught and upset." Vansickle's counsel urged the jury to conclude the statement was truthful because under the circumstances, he did not have an opportunity to reflect. (See *People v. Ramos* (1997) 15 Cal.4th 1133, 1176 [excluded evidence was not critical to defense, and defendant's right to put on a defense was not violated, where defendant was permitted to introduce other comparable evidence on the same topic].)

10

## D.

### *Instructional Error*

Vansickle contends that the trial court erred in giving two jury instructions concerning false and misleading statements (CALCRIM No. 362) and possession of recently stolen property (CALCRIM No. 376). We review the issue de novo (see *People v. Mitchell* (2019) 7 Cal.5th 561, 579) and find no error.

### 1.

Over a defense objection, the trial court instructed the jury, pursuant to CALCRIM No. 362, as follows:

> If defendant Aaron Vansickle made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt. · You may not consider the statement in deciding the other defendant's guilt.

> If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself.

Vansickle does not assert that the instruction misstated the law but instead contends that the instruction was inapplicable because there was no independent evidence that he spoke falsely when he said he was only looking for a place to sleep. We disagree. All of the evidence indicating that he went to the house intending to commit burglary—including the glove, the mask, the headlamp, and the backpack full of stolen property—is circumstantial evidence that his statement was false or misleading. The jury could reasonably conclude that Vansickle's statement that his "only" purpose was to find a place

11

to sleep was either false or misleading. (See *People v. Kimble* (1988) 44 Cal.3d 480, 498 [in determining whether a statement is false, jury may consider physical evidence, testimony of other witnesses, inconsistencies in defendant's testimony, or any other prosecution evidence].) On the other hand, as the conditional nature of the instruction reflects, the jury was not required to conclude that Vansickle's statement was false or misleading. We find no error.

**2.**

Pursuant to CALCRIM No. 376, the trial court instructed the jury that:

> If you conclude that a defendant knew he possessed property and you conclude that the property had, in fact, been recently stolen, you may not convict the defendant of burglary based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed burglary.

> The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of the burglary.

> Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt.

Vansickle asserts that the trial court erred in giving CALCRIM No. 376 when his possession of the property was undisputed and his defense was that he only formed the intent to steal after entering the property. He contends the instruction improperly lessened the prosecution's burden of proof on the issue of intent and violated his due process rights.

12

Vansickle is incorrect.  The instruction is proper when there is circumstantial evidence that the defendant intended to steal at the time he entered the victim's home.  (*People v. Johnson* (1993) 6 Cal.4th 1, 36, overruled on other grounds in *People v. Rogers* (2006) 39 Cal.4th 826.)  There is ample circumstantial evidence here—he broke into the house at night; he brought a glove, a backpack, a headlamp, and a mask; and he took several items from the house.  Moreover, it was implausible, to say the least, that Vansickle travelled such a long distance—from San Francisco to Walnut Creek—with no toiletries or extra clothes, just to sleep in a filthy room under a wet, smelly blanket.  As in *Johnson*, "the ultimate question whether or not a burglary occurred, and the subsidiary question whether defendant possessed the requisite preexisting intent to steal, were left to the jury through the usual instructions regarding the elements of that offense." (*Johnson, supra*, 6 Cal.4th at p. 37.)  Accordingly, we reject Vansickle's argument that the instruction improperly lessened the prosecution's burden of proof on intent.

## DISPOSITION

The judgment is affirmed.

_____

BURNS, J.

We concur:

_____

SIMONS, ACTING P.J.

_____

REARDON, J.*

A156274

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.