[Crim. No. 6391. In Bank. June 26, 1959.]

THE PEOPLE, Respondent, v. HAROLD ALMUS LANGDON, Appellant.

Thomas L. Berkley and Frederic L. Harvey, Jr., for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

McCOMB, J.—After trial before the court without a jury, defendant was found guilty of (a) three counts of robbery in the first degree, (b) attempted robbery in the first degree, (c) three counts of forgery, (d) kidnaping for the purpose of robbery, the kidnaped person suffering bodily injury, and (e) assault with intent to commit rape.

The court found that defendant was armed with a dangerous weapon at the time of the commission of the foregoing offenses. After trial on the issue of penalty, the court sentenced him to death on the kidnaping charge and to the state prison for the term prescribed by law on the other charges. Defendant appeals from the convictions.

*Facts*: About 9:10 p. m. on December 27, 1957, defendant entered the Western Union office at 1307 West 7th Street, Los Angeles, and pretended to be interested in sending a telegram. While Mrs. Willingham, the clerk on duty, was helping defendant with his telegram, another man came in. When she glanced up at him, he told her to keep writing, whereupon defendant went behind the counter. Both men had guns. While the two men held guns on her, defendant took cash, checks, about 215 blank money order drafts, and traveler's checks in the sum of about $15,000 from the cash drawer.

On December 28, 1957, defendant, using the name Richard W. Mitchell, cashed a $20 traveler's check at a clothing store operated by Samuel Zablen in Los Angeles. This was one of the checks stolen the night before from the Western Union office. In order to cash the check, defendant showed Mr. Zeblen a driver's license bearing the name "Richard William Mitchell."

Later the same day, defendant cashed one of the stolen traveler's checks at a shoe store owned by William Levy in Los Angeles. The amount of the check was $20, and again defendant used the name of Richard W. Mitchell. Still later on December 28, he cashed another of the stolen traveler's checks at the shoe store of Bernard Learnihan in Los Angeles. The amount of the check was $50, and defendant used the name and identification of Richard W. Mitchell.

Mr. Mitchell testified that the duplicate driver's license that defendant used for identification had been issued to him earlier in 1957 but that he had lost it some time prior to October 14, 1957. When the license was issued to him, he had failed to sign it, and the signature on it at the time of the trial was not his.

About 10 a. m. on February 28, 1958, defendant and his

partner, James Spates, robbed the liquor store of Harold Curiel at 7528 South Figueroa Street, Los Angeles. The men, each armed with pistols, entered Curiel's store shortly after he had opened for business. After threatening him with their guns and tying him up, they took approximately $60 from his cash register and also took his wallet containing about $15.

On March 8, 1958, defendant and Spates robbed the dry goods store of Maurice Block at 1721 E. 103 Street, Los Angeles. Defendant entered the store first about 8 p. m. and asked to see a white sweater. Jennie Torres, a clerk in the store, took him to the rear of the store and was showing him a sweater when Spates entered and stuck a pistol against Mr. Block's body. Block grabbed Spates' pistol and a struggle ensued, during which Joseph Evans, another customer, came to Block's assistance, and together they disarmed him. Upon being disarmed, Spates fled from the store and managed to elude his pursuers. During the struggle, defendant seemed to suggest silently to Miss Torres that she not go to Block's aid. He did not display any weapon, nor did he attempt to help Spates. The police were summoned, and defendant remained in the store until they arrived and questioned him about the attempted holdup. He identified himself to the police officers as Richard Mitchell and showed them a driver's license bearing that name.

About 5:30 p. m. on March 12, 1958, Miss Jo Cooper was working alone in the Western Union office at 5945 South Avalon, Los Angeles. Defendant entered the office, threatened her with a pistol, and said, "This is a holdup." He then forced Miss Cooper to open the safe and cash drawer, from which he took 250 blank Western Union money orders, American Express money orders, and cash. He then had Miss Cooper lie on the floor and tied her wrists. In doing so he tore her skin and bruised her wrists. He then forced her into a small room at the rear of the office, where he made her lie down and committed an indecent assault on her. When she tried to resist him, he hit her several times on the head with a pipe wrench. Defendant was then interrupted, and when he returned, he attempted to assault her sexually. During this period he removed her underpants. When she continued to resist him, he held a gun against her head and threatened to kill her. Defendant was again interrupted for a few moments. When he returned, he found Miss Cooper on her feet and began to beat her again. Shortly thereafter he left the store. Miss Cooper was taken to the hospital, where she was found

to be hysterical and to have suffered three deep lacerations near the top of her scalp, from which she was bleeding profusely.

Defendant was arrested about March 28, 1958, by officers of the Sacramento Police Department. While he was in custody he was questioned by Officer Eastenson of the Los Angeles Police Robbery Detail. At this time he made a written statement, confessing to the robbery of the Western Union office on December 27, 1957.

Defendant was later questioned by Officer Tidyman, after which he gave a second statement in which he implicated Spates and confessed to the robbery of Harold Curiel, Maurice Block and Miss Cooper. In this conversation he admitted robbing and hitting Miss Cooper with his gun, but he denied attacking her sexually. He also denied hitting her with a wrench. During this conversation, Officer Tidyman saw a wound on defendant's hand, which he admitted had been caused by Miss Cooper's biting him.

During the course of Officer Tidyman's investigation of the robbery and assault on Miss Cooper, he went to defendant's apartment at 430 East 27th Street in Los Angeles and found a gun, a Western Union money order, some cards, and a tag bearing defendant's name. He also found various other items that had been taken from the robbery victims and some of the clothing defendant had worn at the time of the robberies.

Defendant was the only witness in his own defense. On direct examination he admitted his guilt of the robberies and the forgeries; and, in connection with the charges involving Miss Cooper, he admitted hitting her. On cross-examination he stated that he had first tied her hands and had then told her to go into the back room, that he threatened her with a pistol, and that he tied up her feet, slapped her and, when she tried to get away, pistol-whipped her. He stated that during all this time her hands were tied.

Defendant also admitted prior felony convictions for (1) burglary and forgery in 1946, (2) forgery in 1947, (3) forgery in 1949, and (4) forgery in 1954.

■ *Questions*: First. *Did defendant effectively waive his right to a trial by jury?*

*Yes.* Defendant contends that (a) his purported waiver of a jury trial was qualified in such a manner as to make it no waiver at all and (b) the trial court committed prejudicial error by not fully explaining to him the nature of his action in waiving a jury trial.

These contentions are devoid of merit. (a) The record shows that when defendant's case was called for trial on May 27, 1958, he personally waived his right to a jury trial. The exact proceedings are as follows:

Mr. Osterman [for defendant]: Your Honor, on this matter I have discussed with the District Attorney's office, Mr. Alexander, and also with counsel for Spates, and I think the matter can be disposed of without a jury, if the matter was continued today, provided the matter remains in this courtroom. I don't think it will take over an hour and a half to try.

Mr. Nathanson [for the People]: Well, it depends on what kind of a trial it is, your Honor.

The Court: He is just indicating, without a jury.

Mr. Nathanson: I realize that, but I mean, if it goes on the transcript, that is one thing, but there are a great many witnesses, and I think it would take a considerable more time than an hour and a half.

Mr. Osterman: There are several counts there, your Honor. We are trying to straighten out which counts.

Mr. Nathanson: I feel if the matter goes over, there is a possibility that there may be a disposition without too much time being consumed, and I know we are in no position to take it up today here.

The Court: Do you want to waive a jury today, then?

Mr. Osterman: We will waive a jury today, your Honor.

The Court: You represent——

Mr. Osterman: Langdon, your Honor.

The Court: Which is Mr. Langdon?

The Defendant Langdon: Here, sir.

The Court: Mr. Langdon, do you waive your right to a trial by jury, and want to be tried by the judge without a jury?

The Defendant Langdon: Yes, providing it stays in your court, your Honor.

. . . . . . . . . . . .

The Court: Do the People join?

Mr. Nathanson: The People join, your Honor.

The Court: As to both these waivers?

Mr. Nathanson: Yes, your Honor.

The record thus shows that defendant expressly and explicitly waived his right to a jury trial, and the fact that he stated that the waiver was conditional upon the case's

remaining before the judge then presiding does not result in its being ineffective. (*Cf. People* v. *Terry,* 99 Cal.App.2d 579, 584 [9] [222 P.2d 95]; *People* v. *Olson,* 166 Cal.App.2d 532, 535 [3] [333 P.2d 192]; *People* v. *Bastio,* 55 Cal.App.2d 615, 618 [131 P.2d 614] [hearing denied by the Supreme Court]; *People* v. *Pughsley,* 74 Cal.App.2d 70 [1] et seq. [168 P.2d 27].)

The question whether defendant could have withdrawn his waiver if the condition he had sought to impose was not met is not before us. He was tried before the superior court judge for whom he had indicated a preference, and the condition which he purported to attach to the waiver was therefore complied with.

*In re Adams,* 160 Cal.App.2d 454 [325 P.2d 107]; *People* v. *Barnum,* 147 Cal.App.2d 803 [305 P.2d 986]; *People* v. *Benjamin,* 140 Cal.App.2d 703 [295 P.2d 477]; and *People* v. *Pechar,* 130 Cal.App.2d 616 [279 P.2d 570], relied on by defendant, are not here in point, since those cases deal merely with the requirement of a personal waiver by a defendant of his right to a jury trial. Such a waiver is present in this case.

(b) There is nothing in the record to support the proposition that the trial court should have explained to defendant the nature and possible consequence of his action in waiving a jury trial. Defendant was represented by counsel, and he fails to indicate anything in the record to show that either he or his counsel was misled as to the result which might occur from his waiving a jury trial. Defendant not only was represented by counsel, but according to the record had also been before the criminal courts on at least three previous occasions.

A somewhat similar situation was considered in *People* v. *Martinez,* 154 Cal.App.2d 233, 236 [3] et seq. [316 P.2d 14]. In that case the defendant, who had pleaded guilty, alleged that the trial court committed prejudicial error because it had not explained to him the effect and meaning of his plea of guilty before he entered it. The court pointed out that since the defendant was represented by counsel at the time of his plea of guilty, there was no duty upon the trial court to inquire into the matter to determine whether the defendant fully understood the implications of his action.

The same rule applies in the present case. There was no duty on the trial court to inquire into the waiver of a jury trial by defendant unless the trial judge had some reason,

which does not appear here, to think that defendant did not understand the nature of the waiver. Defendant should not be allowed to waive a jury trial, take his chances before a trial court, and then when he finds himself dissatisfied with the result, be allowed to predicate error upon such technicality or vague possibility of misunderstanding.

Second. *Does the trial court have the same power to sentence, in a prosecution for a violation of section 209 of the Penal Code where a jury has been waived, as a jury would have were they the triers of fact?*

*Yes.* Defendant argues that the trial court did not have the right to impose the death penalty upon him, since section 209 of the Penal Code provides that in kidnaping cases for the purpose of robbery where bodily harm is inflicted the defendant may suffer the death penalty *at the discretion of the jury trying the same.*

Defendant claims that since the Legislature did not also specify that the trial court had the same power when hearing a case without a jury, it must be assumed that it was not intended that the trial court have such power. This contention is without merit. When a jury trial is waived, the trial court in a criminal case has the same discretionary power with regard to sentencing as is given a jury when they are the triers of fact. (*People* v. *Dessauer,* 38 Cal.2d 547, 554 [10] [241 P.2d 238]; *In re Boyd,* 108 Cal.App. 541, 543 [2] [291 P. 845].)

In addition, section 190.1 of the Penal Code provides that in cases where the penalty is in the alternative, death or imprisonment for life, the issue of guilt shall first be determined and ''the trier of fact'' shall then hear further proceedings ''on the issue of penalty.'' In view of the waiver of a jury, the trial court was the ''trier of fact,'' and his authority to fix the penalty was specifically provided for by the foregoing code provision.

Third. *Did the trial court commit prejudicial error by stating at the time he made his finding relative to the penalty to be imposed: ''As I previously stated, for this particular offense of which the defendant has been adjudged guilty, the law provides one of two penalties, either death or life imprisonment without the possibility of parole. Incidentally, whether it is worth anything or not, I think of the two penalties the death penalty is the more humane. They are both death penalties. The only difference is the time limit in which the death will result''?*

*No.* The remarks of the trial judge did not show that he disagreed that the death penalty was the extreme penalty. This is demonstrated by the fact that at the time of passing sentence, he remarked on the "aggravated aspect" of the facts in this case and said, among other things: "I see nothing in the case which would lead us to mitigate the offense in any particular, the ruthless, premeditated and very energetically carried out assault on this woman, under the circumstances which obtained. It is therefore our conclusion that the defendant, for said offense, suffer the penalty of death."

These remarks show that the trial court considered this a case where he should impose the highest possible penalty. Since he imposed the death penalty, it is obvious that he properly considered it to be the extreme penalty in this state.

■ If defendant felt that the trial court's casual remark prejudiced his rights in any way, he should have called the matter to the trial judge's attention at the time rather than attempt to predicate error thereon on appeal. (*Cf. People* v. *Ernst,* 121 Cal.App.2d 287, 294 [263 P.2d 114]; *People* v. *Hill,* 116 Cal.App.2d 212, 218 [6] [255 P.2d 54].)

■ Fourth. *Did the trial court err in receiving defendant's confession without first determining whether it was freely and voluntarily made?*

*No.* Officer Tidyman questioned defendant after his arrest in Sacramento. After talking with the officer, defendant confessed to the various crimes with which he was charged and later convicted. No promises of immunity or reward were made to him. He admitted that he made and signed the confessions and testified that Officer Tidyman told him that if he signed one of the confessions, kidnap and assault charges would not be filed against him.

The trial court in rendering its decision, after indicating a disbelief of defendant's testimony, made the following statements: "I think the defendant's attempt to show that he was promised that if he would confess to all these other things that they would not file a kidnapping or assault charge on him was—of course, Sergeant Tidyman denies that any such arrangement was made or even suggested, and of course it wouldn't have been of any value if it had been, if he had made any such promise, and I can't imagine any reason for him doing it if he knew anything about the case, he must have, but even if he had, it would be of no avail to the defendant, but, rather, shows a trading attitude there, and an attempt in

some manner to get away from these matters which he, himself, knows, this one case, which he, himself, knows was the most serious thing in the series.''

Defendant claims that these comments by the trial judge show an erroneous view of the law because they indicate that the trial judge thought defendant's confession was admissible regardless of the statements made to defendant by Officer Tidyman. It is apparent that the trial judge did not mean what defendant contends he meant. A reading of the record shows that what the trial judge meant was that he did not believe defendant's testimony that promises had been made to him in order to get his confession. In addition, the trial court's remarks obviously referred to the fact that the evidence against defendant was so overwhelming that it was not necessary to rely on his confession. The remarks do not show that the court was going to consider the confession regardless of how it was obtained.

■ Fifth. *Was the evidence sufficient to show that defendant was guilty of both kidnaping and robbery?*

*Yes.* Defendant contends that the evidence with regard to the robbery, kidnaping and assault upon Miss Cooper shows that the robbery and kidnaping constituted an indivisible act and that he cannot be convicted of both crimes. The effect of this contention is that defendant admits that he was properly convicted of kidnaping for the purpose of robbery with intent to harm the victim.

■ Defendant is correct in his contention that punishing him separately for the violations of section 209 of the Penal Code (kidnaping) and for the robbery and sex crime which, under the circumstances here, are essential parts of those violations, would amount to double punishment, which is forbidden by section 654 of the Penal Code. However, since defendant is subject to a validly imposed sentence of death, no purpose would be served by reversal of the other judgment of conviction. (*People* v. *Wein*, 50 Cal.2d 383, 409 [326 P.2d 457]; *People* v. *Chessman*, 38 Cal.2d 166, 193 [238 P.2d 1001].)

■ Sixth. *Do the provisions of section 209 of the Penal Code violate defendant's rights to equal protection of the laws?*

*No.* Defendant claims that section 209 of the Penal Code violates his constitutional rights to equal protection of the laws because it makes an illegal distinction between a robber who injures his victim without causing the victim to move

and a robber who forces his victim to move a slight distance and then subjects him to bodily harm.

In *People* v. *Wein,* 50 Cal.2d 383, 400 [16] [326 P.2d 457], this court upheld the constitutionality of section 209 of the Penal Code.

In *People* v. *Thompson,* 133 Cal.App.2d 4, 7 [1] et seq. [284 P.2d 39] (hearing denied by the Supreme Court), the defendant was found guilty of kidnaping for the purpose of robbery. He contended that section 209 of the Penal Code was unconstitutional under the federal and state Constitutions as violative of the equal protection clauses because it made it possible to prosecute one person, like the defendant, for kidnaping for the purpose of robbery, whereas another, on the same facts, could be prosecuted for robbery only, so that the threat of prosecution for kidnaping could be used as a means of extortion.

The court on appeal held the contention to be without merit. It pointed out that under the section as now worded, before a defendant can be found guilty of kidnaping to commit robbery, a person must be kidnaped or carried away, an element of the crime present in the Thompson case and also present here, which is not normally incident to robbery.

The judgments are affirmed.

Gibson, C. J., Shenk, J., Schauer, J., Spence, J., and Peters, J., concurred.

Appellant's petition for a rehearing was denied July 22, 1959.