Filed 6/29/23  P. v. See CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>            v.<br><br>APFU SEE,<br><br>      Defendant and Appellant. | F083317<br><br>(Super. Ct. No. VCF342753B)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Kathryn T. Montejano, Judge.

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Kathryn L. Althizer, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING OPINION**

Defendant and appellant Apfu See was charged with murder (Pen. Code,[1] § 187, subd. (a) [count 1]), attempted murder (§§ 187, subd. (a), 664 [count 2]), shooting at an occupied motor vehicle (§ 246 [count 3]), and arson (§ 451, subd. (d) [count 4]). The operative information further alleged: (1) as to count 1, defendant intentionally killed the victim while defendant was a participant in a criminal street gang and the murder was carried out to further the activities of the gang (§ 190.2, subd. (a)(22)); (2) as to count 1, defendant intentionally killed the victim by means of lying in wait (*id.*, subd. (a)(15)); (3) as to counts 1 through 3, defendant personally used a firearm (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm (*id.*, subd. (c)), and personally and intentionally discharged a firearm that proximately caused great bodily injury and/or death (*id.*, subd. (d)); (4) as to counts 2 through 4, defendant committed the offense for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)); and (5) as to counts 1 through 4, defendant was previously convicted of assault with a firearm, a serious felony (§ 667, subd. (a)(1)) and a qualifying "strike" under the Three Strikes law (*id.*, subds. (b)-(i), § 1170.12, subds. (a)-(d)).

Following a bench trial, defendant was found guilty as charged. The trial court also found true the firearm and prior conviction allegations and found not true the gang murder and lying-in-wait special circumstance allegations.[2] Defendant received 50 years to life for first degree premeditated murder, plus 25 years to life for intentionally discharging a firearm that proximately caused death and five years for the prior serious felony conviction, on count 1; 14 years to life for attempted first degree premeditated murder, plus 25 years to life for intentionally discharging a firearm that proximately caused great bodily injury and five years for the prior serious felony conviction, on

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2] The court did not appear to expressly rule on the section 186.22 gang enhancement allegations, but the parties concede these were found not true.

count 2; and six years, plus five years for the prior serious felony conviction, on count 4.[3] He was also ordered to pay various fines and assessments.

On appeal, defendant makes several contentions. First, he "did not knowingly and intelligently waive his constitutional right to a jury trial . . . ." (Capitalization omitted.) Second, "the evidence was insufficient to support his conviction for committing arson . . . ." (Capitalization omitted.) Third, the trial court "abused its discretion in refusing to strike the firearm enhancement." Alternatively, a remand for resentencing is necessary "to permit the court to consider imposing a lesser sentence under section 12022.53, subdivision (b) or (c) in lieu of the term imposed under subdivision (d)." Fourth, a remand for resentencing is necessary "so the trial court can exercise its discretion to strike five-year enhancements for [defendant]'s prior serious felony conviction." (Capitalization omitted.) Fifth, a remand for resentencing is necessary as to "the upper term sentence imposed in count 4" (capitalization omitted) in view of a recent statutory amendment that "generally limits the trial court's ability to impose the upper term unless aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or by the court in a court trial." Finally, "the court violated [defendant's] due process rights by imposing the [various fines and assessments] without determining whether he had the present ability to pay these amounts."

We conclude: (1) defendant knowingly and intelligently waived his constitutional right to a jury trial; (2) substantial evidence supported the arson conviction; (3) with respect to the upper term of imprisonment imposed on count 4, a remand for resentencing is unnecessary; and (4) defendant forfeits his other claims of error on appeal.

---

[3] Enhancements for personal firearm use and personal and intentional firearm discharge were stayed as to counts 1 and 2.

Defendant also received 14 years, plus 10 years for personally using a firearm, on count 3. Execution of punishment on this count was stayed pursuant to section 654.

## STATEMENT OF FACTS

On October 17, 2016, at around 12:10 a.m., gas station clerk Lloyd S. was near the end of his work shift when he "heard a loud bang." He then "heard four more." Lloyd called the Visalia Police Department. Officers arrived "[v]ery quickly" and encountered a vehicle next to a gas pump. Larry T., the driver, had been shot in the leg. He was subsequently transported to the hospital and ultimately survived. On the other hand, Paul R., the front seat passenger, sustained multiple gunshot wounds and died at the scene. Near the vehicle, officers recovered "seven spent 9-millimeter shell casings" and several cigarette butts. Surveillance footage recorded prior to and during the shooting showed (1) defendant "standing in front of the store smoking a cigarette"; (2) Larry and Paul arriving; (3) Paul leaving the vehicle "for a short period of time"; (4) Paul returning to the vehicle; (5) defendant approaching the vehicle; and (6) defendant drawing a firearm from his waistband and shooting at the vehicle. Later that morning, the California Highway Patrol came across a burning minivan near some almond fields in Tulare. The vehicle belonged to Nora H., who had lent it to her daughter. At the time, Nora's daughter was dating Edgar Cardenas.

Defendant was arrested and a buccal swab was administered. Testing revealed the swab and one of the cigarette butts retrieved from the gas station shared the same DNA profile. Officers searched defendant's home and found a gas can in the master bedroom. They also combed through defendant's social media account and found messages between defendant and Michael See[4] on October 17, 2016, at 5:22 p.m. In those messages, defendant "ask[ed] Michael to go to his house and pick up his thang" and "to get the box of shells that are in his jacket."

---

[4] Hereafter, to avoid confusion, we refer to Michael See either by his given name or by his full name.

4.

Sergeant Swarthout of the Visalia Police Department interviewed Michael, who admitted he was at the gas station at the time of the shooting. According to Michael, he was a passenger in a minivan and "was on his phone" "in the back seat" "when he heard some shots being fired." The shooter was an Asian male.[5] Michael was present when the minivan was set on fire. Thereafter, Keith Keovilay came by to give him and defendant a ride. Michael identified Cardenas as the individual "responsible for burning . . . the van."[6] Next, Swarthout interviewed Keovilay, who confirmed he picked up defendant and Michael at the scene of the vehicle fire.[7] Lastly, Swarthout interviewed Cardenas, who admitted he was at the gas station at the time of the shooting. According to Cardenas, he drove the van and defendant was the shooter.[8]

Cardenas was charged with arson (§ 451, subd. (d) [count 5]) and accessory after the fact (§ 32 [count 6]). The information further alleged: (1) as to count 5, he committed the offense for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(B)); and (2) as to count 6, he was armed with a handgun (§ 12022, subd. (a)(1)). Cardenas pled guilty as charged and admitted the gang allegation.

---

[5] The record shows defendant is of Thai descent.

[6] At trial, Michael testified he had been intoxicated on October 17, 2016, and could not recall what had transpired that day. He denied being at the gas station, being in the van, knowing defendant, and getting a ride from Keovilay.

[7] At trial, Keovilay testified he could not recall going somewhere on October 17, 2016, to pick up Michael.

[8] At trial, Cardenas testified he had been intoxicated on October 17, 2016. He remembered driving the van, pumping gas, hearing gunshots, and "driving home" but otherwise "[could]n't remember that night." Cardenas denied knowing defendant. He admitted Michael—a "childhood friend"—was with him in the van.

## DISCUSSION

**I.     Defendant knowingly and intelligently waived his constitutional right to a jury trial.**

a.  *Background*

At a July 13, 2017 trial setting conference, defense counsel stated, "[M]y client's willing to waive a jury on this case and argue this case on a court trial . . . ."  The prosecutor replied, "Your Honor, People are agreeable to that."  The following colloquy transpired:

> "[PROSECUTOR]:  Your Honor, would the court get a personal waiver of the jury trial from the defendant, please?
>
> "THE COURT:  Certainly.  [¶]  Mr. See, sir, excuse me, I know you're talking to [defense counsel].  [¶]  Sir, you are entitled to have a jury trial or a court trial.  Are you willing to waive your right to have a jury trial?
>
> "THE DEFENDANT:  Yes.
>
> "THE COURT:  Okay.  Do you have any questions about that, like, would you like to discuss further with [defense counsel]?
>
> "[DEFENSE COUNSEL]:  Your Honor, I met with him last night, and discussed at length and I answered all of his questions last night, and he understands what we're doing here.
>
> "THE COURT:  Okay.  So you don't have any further questions for [defense counsel], Mr. See?
>
> "THE DEFENDANT:  No, ma'am."

b.  *Analysis*

"A criminal defendant has the constitutional right to a jury trial.  [Citations.]  The defendant may waive his constitutional right to a jury trial, provided the waiver is ' "knowing and intelligent, that is, ' " 'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,' " ' as well as voluntary ' " 'in the sense that it was the product of a free and deliberate choice rather

than intimidation, coercion, or deception.' " ' " [Citations.] "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." ' [Citation.]" (*People v. Roles* (2020) 44 Cal.App.5th 935, 949-950 (*Roles*).)

On appeal, defendant contends the trial court "did not properly advise [him] of his constitutional right to a jury trial," he "did not knowingly and intelligently waive his constitutional right to a jury trial on the charged offenses," and "the structural error is reversible per se." He cites *People v. Sivongxxay* (2017) 3 Cal.5th 151 (*Sivongxxay*) as supporting authority. In that case, the California Supreme Court offered "some general guidance to help ensure that a defendant's jury trial waiver is knowing and intelligent, and to facilitate the resolution of a challenge to a jury waiver on appeal." (*Id.* at p. 169.) The high court proposed:

> "Going forward, we recommend that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence. We also recommend that the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so in any number of ways—among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived. Ultimately, a court must consider the defendant's individual circumstances and exercise judgment in deciding how best to ensure that a particular defendant who purports to waive a jury trial does so knowingly and intelligently." (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 169-170.)

The Supreme Court emphasized its guidance is "advisory" and "not intended to limit trial courts to a narrow or rigid colloquy." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170; accord, *Roles*, *supra*, 44 Cal.App.5th at p. 950.)

In the instant case, there was no advisement akin to the one endorsed in *Sivongxxay*. Nevertheless, a "departure from [*Sivongxxay*'s] recommended colloquy . . . will not necessarily render an ensuing jury waiver invalid." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170.) "The test of a valid waiver turns on whether the record affirmatively shows that the waiver is voluntary and intelligent under the totality of the circumstances." (*Roles*, *supra*, 44 Cal.App.5th at p. 950; see *Sivongxxay*, *supra*, at p. 170 [" ' "Matters of reality, and not mere ritual, should be controlling." ' "].) Here, defendant was represented by an attorney. (See *Sivongxxay*, *supra*, at p. 167; *People v. Langdon* (1959) 52 Cal.2d 425, 432 (*Langdon*); cf. *People v. Daniels* (2017) 3 Cal.5th 961, 996 (lead opn. of Cuéllar, J.) [the appellant "without the benefit of counsel when he proffered his waiver"].) At the trial setting conference, defense counsel "initiated the request for a court trial." (*Sivongxxay*, *supra*, at p. 167; cf. *People v. Daniels*, *supra*, at p. 993 (lead opn. of Cuéllar, J.) [the appellant "never explicitly requested or referenced a court trial" until judge "broached the issue"].) The court informed defendant he was "entitled to have a jury trial or a court trial" and asked if he was "willing to waive [his] right to have a jury trial." Defendant said, "Yes." (See *Langdon*, *supra*, at p. 431 ["The Court: Mr. Langdon, do you waive your right to a trial by jury, and want to be tried by the judge without a jury? [¶] The Defendant Langdon: Yes, providing it stays in your court, your Honor."]; *People v. Evanson* (1968) 265 Cal.App.2d 698, 700 ["[The] appellant's response was verbal and explicit: 'Yes sir' to court's question, 'Is [waiver] agreeable with you, Mr. Evanson?' "].) When the court asked defendant if he "ha[d] any questions about that" or "would . . . like to discuss further with [defense counsel]," defense counsel interjected, asserting he "met with [defendant] last night," "discussed [the matter] at length," and "answered all of his questions last night" and defendant "understands what

8.

we're doing here." (See *People v. Castaneda* (1975) 52 Cal.App.3d 334, 345 ["[The a]ppellant's counsel told the judge that he had spent between an hour and two hours discussing the matter with [the] appellant and that they had agreed to waive the jury trial."]; cf. *People v. Blancett* (2017) 15 Cal.App.5th 1200, 1203, 1206 [defense counsel immediately requested court trial after appointment and there was no record of any discussion between him and [the] appellant prior to the waiver].) When the court asked defendant if he "ha[d] any further questions for [defense counsel]," defendant responded, "No, ma'am." (See *People v. Diaz* (1992) 3 Cal.4th 495, 571 ["[W]hen the court asked whether he had any questions regarding the waiver, or wished to discuss it further with counsel, [the] defendant answered in the negative."].)

Defendant does not point to "anything in the record to show . . . he . . . was misled as to the result which might occur from his waiving a jury trial." (*Langdon*, *supra*, 52 Cal.2d at p. 432.) Furthermore, he "had prior experience with the criminal justice system . . . ." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.) As mentioned, the court found true the allegation defendant was previously convicted of assault with a firearm. The record also demonstrates defendant was convicted of misdemeanor receipt of a stolen vehicle in 2015 and misdemeanor battery in 2018 and sustained multiple juvenile adjudications since 2005. (See *Langdon*, *supra*, at p. 432 ["[The appellant] not only was represented by counsel, but according to the record had also been before the criminal court[] on at least three previous occasions."]; cf. *People v. Jones* (2018) 26 Cal.App.5th 420, 437 ["Neither the information nor the probation report reveals a prior criminal charge."].) Thus, "we conclude the totality of the circumstances demonstrates that defendant entered a knowing and intelligent jury trial waiver." (*Roles*, *supra*, 44 Cal.App.5th at p. 950.)

## II.     Substantial evidence supported defendant's arson conviction.

### a.  *Standard of review*

"To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it

9.

contains [substantial] evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.) We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' " (*People v. Tripp*, *supra*, at p. 955, italics omitted.) "This standard of review . . . applies to circumstantial evidence. [Citation.] If the circumstances, plus all the logical inferences the [trier of fact] might have drawn from them, reasonably justify the [trier of fact]'s findings, our opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." (*Ibid*.)

"Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the [trier of fact], it must clearly appear that upon no hypothesis what[so]ever is there sufficient substantial evidence to support it." (*People v. Redmond*, *supra*, 71 Cal.2d at p. 755.) " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' " (*People v. Lee* (2011) 51 Cal.4th 620, 632.)

b. *Analysis*

"A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." (§ 451; see § 31 ["All persons concerned in the

commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed."].)

On appeal, defendant "does not contest the fact the minivan had been burned" and "the record contains 'evidence that the minivan fire was of incendiary origin . . . .' " He contends "there was insufficient evidence to establish [arson] on the theor[y] that [he] was a direct perpetrator of this offense or aided and abetted this offense . . . ." Specifically, he insists "there is 'no evidence . . . that he had any intent of aiding or encouraging his confederates lighting the minivan.' "

" '[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295-296.) "[P]roof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.) "The 'act' required for aiding and abetting liability need not be a substantial factor in the offense. ' "Liability attaches to anyone 'concerned,' however slight such concern may be, for the law establishes no degree of the concern required to fix liability as a principal." [Citation.]' [Citation.]" (*People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 743.) "Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense." (*People v. Pre* (2004) 117 Cal.App.4th 413, 420.) " 'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' [Citation.]"

11.

(*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.) " 'Whether defendant aided and abetted the crime is a question of fact, and on appeal all conflicts in the evidence and reasonable inference must be resolved in favor of the judgment.' [Citation.]" (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409 (*Campbell*).)

The record—viewed in the light most favorable to the prosecution—demonstrates Cardenas drove defendant and Michael to the gas station, where defendant shot the victims. Thereafter, the trio traveled a significant distance to a secluded area in Tulare, where Cardenas set the minivan on fire. (See *People v. Green* (1983) 146 Cal.App.3d 369, 377 (*Green*) ["presence in the vicinity at the time of the fire" a factor relied upon by courts in affirming arson convictions]); see also *Campbell*, *supra*, 25 Cal.App.4th at p. 409 ["[The defendant] did not independently happen by the scene of the crime."].)[9] Given defendant had committed murder and attempted murder, his "possible motive for arson was readily apparent: to spoliate [incriminating evidence]." (*People v. Booker* (2011) 51 Cal.4th 141, 177; see *Green*, *supra*, at p. 377 [motive a factor relied upon by courts in affirming arson convictions]). While the vehicle burned, defendant and Michael left the scene with Keovilay. (See *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1095 ["[F]light is one of the factors which is relevant in determining consciousness of guilt."].) Later, after defendant was arrested, law enforcement searched his residence and found a gas can in the master bedroom. (See *Green*, *supra*, at p. 377 ["possession of inflammatory materials" a factor relied upon by courts in affirming arson convictions].) Under the totality of the circumstances, a reasonable factfinder could conclude defendant aided and abetted arson and "was not simply an innocent, passive, and unwitting bystander." (*Campbell*, *supra*, at p. 410; see *People v. Bloom* (1989) 48 Cal.3d 1194,

---

[9] Defendant claims "the recanted testimony of [his] alleged accomplice, co-defendant Cardenas that [he] was at the scene is of no import" because "that testimony is [not] corroborated by other evidence." However, both Michael and Keovilay confirmed defendant's presence to Swarthout.

1208 ["[C]ircumstantial evidence is as sufficient as direct evidence to support a conviction."].)

## III. Defendant's remaining claims are either forfeited or meritless.

a. *Background*

At the April 16, 2019 sentencing hearing, the trial court pronounced:

"The court finds that in aggravation, that the defendant induced others to participate in the commission of the crime or occupied a position of leadership, of dominance of other participants in the commission.

"Additionally, the defendant was engaged in violent conduct which indicates a serious danger to society and also that defendant's prior convictions as an adult were numerous. [¶] . . . [¶]

"In Count 4, the defendant is committed to state prison for the aggravated term of six years pursuant to [section] 1170.12[, subdivision ](c)(1) plus an additional and consecutive five years pursuant to [section] 667[, subdivision ](a)(1).

"The court is gonna comment right now that the court does have the discretion to not impose the [section] 667[, subdivision ](a)(1) enhancement. The court finds that based on the facts of this case that it's important to impose those enhancements, and so the court will do so. That is for a total of 11 years with credit for 818 days spent in custody awaiting sentence, zero conduct credits, for a total of 818 days. [¶] . . . [¶]

"In Count 1, the defendant is committed to state prison for the term of 50-years-to-life pursuant to [section] 1170.12[, subdivision ](c)(1) plus an additional and consecutive 25-years-to-life pursuant to [section] 12022.53[, subdivision ](d) plus an additional and consecutive five years pursuant to [section] 667[, subdivision ](a)(1) with zero presentence credits. This term is to run consecutive to Count 4.

"At this time, the court will also comment that recent change in law allows the court to strike the sentencing enhancements for firearms. The court does not think that's appropriate in this case, and so the court is, in fact, going to be sentencing as I just did the defendant to the firearm enhancements.

"In Count 2, the defendant's committed to state prison for the term of 14-years-to-life pursuant to [section] 1170.12[, subdivision ](c)(1) plus

13.

> an additional and consecutive 25-years-to-life pursuant to [section] 12022.53[, subdivision ](d) plus an additional and consecutive five years pursuant to [section] 667[, subdivision ](a)(1) with zero presentence credits, and that term is to run consecutive to Count 4."

The court ordered defendant to pay a $10,000 restitution fine (§ 1202.4), a $10,000 parole revocation restitution fine (§ 1202.45), $4,101.97 in victim restitution with interest to accrue at a rate of 10 percent per annum (§ 1202.4, subd. (f)), a $160 court operations assessment (§ 1465.8), and a $120 criminal conviction assessment for court facilities (Gov. Code, § 70373). Defendant did not object.

b. *Analysis*

i. Firearm enhancements

"Section 12022.53 was first enacted in 1997 as part of the state's 'Use a Gun and You're Done' law. [Citation.] The statute sets out 'sentence enhancements for personal use or discharge of a firearm in the commission' of specific felonies. [Citation.] Section 12022.53, subdivision (a) lists the felonies to which the section applies. Section 12022.53[, subdivision ](b) mandates the imposition of a 10-year enhancement for personal use of a firearm in the commission of one of those felonies; section 12022.53[, subdivision ](c) mandates the imposition of a 20-year enhancement for personal and intentional discharge of a firearm; and section 12022.53[, subdivision ](d) provides for a 25-year-to-life enhancement for personal and intentional discharge of a firearm causing great bodily injury or death to a person other than an accomplice. The legislative intent behind section 12022.53 is to impose ' "substantially longer prison sentences . . . on felons who use firearms in the commission of their crimes." ' [Citation.]" (*People v. Tirado* (2022) 12 Cal.5th 688, 694-695, fns. & italics omitted (*Tirado II*).)

"Before January 1, 2018, section 12022.53 prohibited courts from striking its enhancements. Former subdivision (h) of section 12022.53 provided: 'Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section.'

14.

[Citation.] Thus, if a section 12022.53 enhancement was alleged and found true, its imposition was mandatory. [Citations.] In 2017, the Legislature enacted Senate Bill No. 620 (2017-2018 Reg. Sess.) . . . , amending section 12022.52[, subdivision ](h) to remove this prohibition. [Citation.]" (*Tirado II*, *supra*, 12 Cal.5th at pp. 695-696.) Section 12022.53, subdivision (h) now provides: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (See § 1385, subd. (a) ["The judge or magistrate may, . . . in the furtherance of justice, order an action to be dismissed."]; *Tirado II*, *supra*, at p. 696 [§ 1385 "construed to permit the dismissal of parts of an action" "including a weapon or firearm use enhancement"].)

On April 11, 2019, Division Five of the First Appellate District filed its opinion in *People v. Morrison* (2019) 34 Cal.App.5th 217 (*Morrison*). In that case, the appellate court held, among other things:

> "Courts now may 'strike or dismiss' an enhancement under section 12022.53, subdivision (d) in the interests of justice under section 1385. In a case where the jury had also returned true findings of the lesser enhancements under section 12022.53, subdivisions (b) and (c), the striking of an enhancement under section 12022.53, subdivision (d) would leave intact the remaining findings, and an enhancement under the greatest of those provisions would be mandatory unless those findings were also stricken in the interests of justice." (*Morrison*, *supra*, 34 Cal.App.5th at p. 222; see *Tirado II*, *supra*, 12 Cal.5th at p. 697 ["*Morrison* correctly described the scope of a trial court's sentencing discretion under section 12022.53."].)

Here, by the time of the April 16, 2019 sentencing hearing, Senate Bill No. 620 (2017-2018 Reg. Sess.) and *Morrison* were already in effect. At said hearing, the court noted a "recent change in law allows the court to strike the sentencing enhancements for firearms" but "d[id] not think that's appropriate in this case" in view of the circumstances in aggravation. Defense counsel did not object or otherwise raise a claim of error below. As a result, defendant forfeits claims raised for the first time on appeal. (See *People v.*

15.

*Gonzalez* (2003) 31 Cal.4th 745, 751 ["A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial."].)[10]

### ii. Prior serious felony enhancements

"On September 30, 2018, the Governor signed Senate Bill [No.] 1393 [2017-2018 Reg. Sess.] which, effective January 1, 2019, amends sections 667[, subdivision ](a) and 1385[, subdivision ](b) to allow a court to exercise its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes." (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971, citing Stats. 2018, ch. 1013, §§ 1-2.)

Here, by the time of the April 16, 2019 sentencing hearing, Senate Bill No. 1393 (2017-2018 Reg. Sess.) was already in effect. At said hearing, the court recognized it "ha[d] the discretion to not impose the [section] 667[, subdivision ](a)(1) enhancement" but elected "to impose those enhancements" "based on the facts of th[e] case." Defense counsel did not object or otherwise raise a claim of error below. As a result, defendant forfeits claims raised for the first time on appeal. (See *People v. Gonzalez, supra*, 31 Cal.4th at p. 751.)

### iii. Selection of the upper term of imprisonment on count 4

"Section 1170, subdivision (b) governs imposition of a judgment of imprisonment when a statute specifies three possible terms. Prior to 2007, section 1170, subdivision (b)

---

**10** Defendant states the "Courts of Appeal were split on the question of whether a trial court could strike the section 12022.53, subdivision (d) enhancement and, in its place, impose a lesser enhancement under section 12022.53, subdivision (b) or (c)." He cites *People v. Tirado* (2019) 38 Cal.App.5th 637 (*Tirado I*), in which our court disagreed with *Morrison*. However, our opinion in *Tirado I* was filed August 12, 2019, nearly four months after defendant's sentencing hearing. Since *Morrison* was the controlling authority at the time of the hearing, an objection "would [not] have been futile or wholly unsupported by substantive law then in existence." (*People v. Welch* (1993) 5 Cal.4th 228, 237.) We also point out the California Supreme Court ultimately reversed *Tirado I* and upheld *Morrison*. (See generally *Tirado II, supra*, 12 Cal.5th 688.)

set the middle term as the presumptive term, but authorized the trial court to impose the upper term if it found circumstances in aggravation. [Citation.] The trial court was required to set forth on the record the facts supporting imposition of the upper term, and those facts were required to be established by a preponderance of the evidence. [Citations.] However, in 2007, the United States Supreme Court [in *Cunningham v. California* (2007) 549 U.S. 270] determined this sentencing scheme was unconstitutional because, 'under the Sixth Amendment, any fact [other than a prior conviction] that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' [Citations.]" (*People v. Sallee* (2023) 88 Cal.App.5th 330, 336-337 (*Sallee*).)

"In response to *Cunningham*, the California Legislature amended section 1170, subdivision (b) to eliminate the presumption for the middle term and to instead provide that 'the choice of the appropriate term shall rest within the sound discretion of the court.' [Citation.] The intent of this urgency legislation was to 'maintain stability in California's criminal justice system while the criminal justice and sentencing structures in California sentencing [were] being reviewed.' [Citation.] This statutory language providing trial courts broad discretion to choose within the sentencing triad remained intact until January 1, 2022. [Citations.]" (*Sallee*, *supra*, 88 Cal.App.5th at p. 337.)

"Effective January 1, 2022, Senate Bill No. 567 [2021-2022 Reg. Sess.] amended section 1170, subdivision (b), to provide: 'When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).' [Citation.] Subdivision (b)(2) in turn provides, 'The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable

17.

doubt at trial by the jury or by the judge in a court trial. . . .' Subdivision (b)(3) creates an exception to this requirement: 'Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury.' " (*Sallee*, *supra*, 88 Cal.App.5th at p. 337.)

On appeal, defendant contends "[t]hese amendments apply retroactively" "because his conviction was not final when this legislation took effect." The Attorney General concedes "[Senate Bill No.] 567's amendments to section 1170, subdivision (b), apply retroactively to [defendant.]" (Boldface omitted.) We accept this concession. (See *In re Estrada* (1965) 63 Cal.2d 740, 744-746 [a defendant whose case is not yet final is entitled to the ameliorating benefits of newly enacted sentencing statutes absent a contrary indication from the Legislature].)

The Attorney General maintains "remand is not necessary" because imposition of the upper term on count 4 "complies with section 1170, subdivision (b), as amended by [Senate Bill No.] 567." We agree. Pursuant to section 1170, subdivision (b)(2), the upper term of imprisonment may be imposed where the facts underlying the circumstances in aggravation have been found true beyond a reasonable doubt by the judge in a court trial. As noted, defendant waived his right to a jury trial and proceeded with a court trial. The court—sitting as the trier of fact—found him guilty of first degree premeditated murder (count 1), attempted first degree premeditated murder (count 2), shooting at an occupied motor vehicle (count 3), and arson (count 4). It also found true the allegations defendant was previously convicted of a serious felony (assault with a firearm) and—in connection with counts 1 through 3—he personally used a firearm, personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm that proximately caused great bodily injury and/or death. At the sentencing hearing, the court cited the following circumstances in aggravation to justify the imposition of the "aggravated" upper term on count 4: (1) "defendant induced others

18.

to participate in the commission of the crime or occupied a position of leadership, of dominance of other participants in the commission" (accord, Cal. Rules of Court, rule 4.421(a)(4)); (2) "defendant was engaged in violent conduct which indicates a serious danger to society" (accord, *id.*, rule 4.421(b)(1)); and (3) "defendant's prior convictions as an adult were numerous" (accord, *id.*, rule 4.421(b)(2)). In addition, defendant's criminal history was established by certified records of his prior convictions and juvenile adjudications.[11]

        iv. *Fines and assessments*

On appeal, defendant argues "the court violated his due process rights by imposing the restitution and parole revocation fines as well [as] the court operations fee and criminal conviction assessment without determining whether he had the present ability to pay these amounts." He cites *People v. Dueñas* (2019) 30 Cal.App.5th 1157, in which Division Seven of the Second Appellate District held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present

---

[11] Defendant also mentions Assembly Bill No. 124 (2021-2022 Reg. Sess.) and Senate Bill No. 81 (2021-2022 Reg. Sess.).

Assembly Bill No. 124 (2021-2022 Reg. Sess.), which became effective on January 1, 2022, "made a low-term sentence presumptively appropriate under specified circumstances . . . ." (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095.) In his brief, defendant fails to explain the relevance of this bill to the instant case. "It is not this court's role to connect the dots." (*Perry v. City of San Diego* (2021) 65 Cal.App.5th 172, 188, fn. 8.) As we will not develop defendant's claim for him, we decline to address it. (See *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1.)

"In 2021, the Legislature enacted Senate Bill No. 81 (2021-2022 Reg. Sess.) . . . , which amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) The amended law " 'shall apply to sentencings occurring after the effective date of' Senate Bill No. 81" (*ibid.*), i.e., January 1, 2022 (*ibid.*). Because we do not find resentencing necessary, Senate Bill No. 81 (2021-2022 Reg. Sess.) does not currently apply.

ability to pay" before it imposes any fines or assessments. (*Id.* at p. 1164.)[12] The decision in *People v. Dueñas* was filed January 8, 2019, more than three months before defendant's sentencing hearing. An objection "would [not] have been futile or wholly unsupported by substantive law then in existence." (*People v. Welch*, *supra*, 5 Cal.4th at p. 237.) Yet, defense counsel did not object or otherwise raise a claim of error below. As a result, defendant forfeits claims raised for the first time on appeal. (See *People v. Aguilar* (2015) 60 Cal.4th 862, 864 ["[The] defendant's failure to challenge the fees in the trial court precludes him from doing so on appeal."].)

**DISPOSITION**

The judgment is affirmed.


DETJEN, Acting P. J.

I CONCUR:


SMITH, J.

---

[12] Presently pending before our Supreme Court is *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, in which review is limited to (1) whether a court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments, and (2) if so, which party bears the burden of proof regarding a defendant's inability to pay.

MEEHAN, J., Concurring:

I concur with the result reached by the majority on each issue, and I join their reasoning in every regard except as it pertains to retroactive application of Penal Code section 1170, subdivision (b),[1] as it was amended by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567).  I respectfully concur separately because, while I agree with the majority that retroactive application of amended section 1170 does not require resentencing in this case, I would reach that conclusion by applying the clear indication test articulated in *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).  I join the majority opinion and its result except for the portion of part III.b.iii. of the Discussion, where I believe *Gutierrez* should be applied.

As the majority explains in part III.b.iii. of the Discussion, *ante*, the aggravating circumstances the trial court relied on to impose the upper term for count 4 were properly considered under amended section 1170, subdivision (b)(2), and defendant's criminal history was established by certified records as required under section 1170, subdivision (b)(3).  As a result, the upper term sentence comports with state law as amended under Senate Bill 567, and it presents no jury trial issue under the Sixth Amendment.  However, for the reasons set out in *People v. Falcon* (2023) __ Cal.App.5th __ (2023 Cal.App. Lexis 480), resentencing is nonetheless required unless the record clearly indicates the trial court would have imposed the upper term sentence had it been aware of its narrowed discretion to do so under section 1170, subdivision (b)(1) and (b)(2).  (*Id.* at p. __ [2023 Cal.App. Lexis 480, *8–9, 77–78] [to conclude resentencing is unnecessary upon retroactive application of Sen. Bill 567, *Gutierrez*'s clear indication test must be satisfied]; accord, *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1137–1138, review granted May 17, 2023, S279147.)

---

[1]     Further statutory references are to the Penal Code.

The record here contains such a clear indication.  The trial court repeatedly emphasized the facts of the case both to impose the upper term and in declining to strike any enhancements, plainly indicating it ascribed heavy aggravating weight to defendant's conduct in committing the offenses.  Defendant's conduct was the basis for two of the three aggravating circumstances relied on to impose the upper term sentence.  Given the weight afforded those circumstances, in addition to defendant's prior convictions, which the court also weighed in aggravation, the imposition of consecutive sentences, and the refusal to strike any enhancements, the record clearly indicates the trial court would have imposed the upper term even if it had been aware of its narrowed discretion to do so under the presumption favoring a middle term maximum sentence.


MEEHAN, J.


2.