Filed 10/2/24  P. v. Hillmon CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B330675 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A790968) |
| v. | |
| CARLTON KERGE HILLMON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gustavo N. Sztraicher, Judge.  Affirmed.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Carlton Kerge Hillmon appeals the order denying his petition for resentencing under Penal Code former section 1170.95 (now section 1172.6)[1] following an evidentiary hearing.  Defendant argues substantial evidence did not support the trial court's finding he directly aided and abetted murder with implied malice, or alternatively, that the matter must be remanded for the court to consider his youth at the time of the murder.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**
**A.     The Shooting of Richard Lewis**
On July 30, 1985, Richard Lewis was shot and killed at 101st Street and Figueroa Street in Los Angeles County.  In October 1986, defendant was arrested for a parole violation: possession of a firearm by a felon.  Two days later, Los Angeles Police Department Detective Aaron Martin interviewed defendant about the Lewis shooting.  Detective Martin read defendant his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, and defendant waived them.  Defendant admitted to the detective that he was involved in the shooting.

**B.     Preliminary Hearing**
At defendant's preliminary hearing in December 1986, the parties stipulated to the following facts: (1) Lewis was shot and killed at 101st Street and Figueroa Street on July 30, 1985, (2) an

_____

[1]     All subsequent undesignated statutory references are to the Penal Code.  Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  There were no substantive changes to the statute.  All further references to the statute will be to the new section number.

autopsy determined the cause of death was multiple gunshot wounds, and (3) the autopsy report would be made part of the preliminary hearing transcript and considered as evidence for purposes of the preliminary hearing.

Detective Martin testified about his interview of defendant. The following facts are taken from Detective Martin's testimony.

On the evening of July 30, 1985, defendant and his companion, Michael Johnson, along with their respective girlfriends, drove to a hamburger stand at Florence and Vermont Avenues. As defendant went to order, there was an "exchange of looks" between defendant and Lewis. Defendant was a member of the Eight Tray Hoover Crips gang. Lewis was a member of the 9-0 Hoover Crips gang. There was animosity between the gangs.

Defendant told Johnson about Lewis and that he was a 9-0 Hoover Crip. Defendant also told Johnson he overheard Lewis and his friends discussing going to another hamburger stand at 101st Street and Figueroa Street.

Defendant drove his companions to 1022 West 84th Street and dropped off his and Johnson's girlfriends. Defendant and Johnson got into a different car registered either to defendant or someone in his family. Defendant then drove to Johnson's house, and Johnson retrieved a handgun. Defendant and Johnson returned to the original hamburger stand, but Lewis and his friends were no longer there. Defendant assumed Lewis went to 101st Street and Figueroa Street based on what defendant previously overheard. Defendant drove himself and Johnson there. Defendant drove past the location, made at least two right turns, and then drove up an alley in the back of the hamburger stand, where they located Lewis's car. Defendant pulled up

3

beside Lewis's car, and Johnson fired more than 10 shots. Lewis sustained seven gunshot wounds and died.

After the shooting, defendant drove back to Johnson's house, and Johnson dropped off the handgun. They returned to 1022 West 84th Street and had their girlfriends follow them in a separate car. Defendant then drove to a shopping center where he parked the car used in the shooting, wiped it clean of fingerprints, and left it.

Detective Martin initially testified that defendant said he "planned" the killing with Johnson, but during his cross-examination by defense counsel, the detective was asked whether defendant used the word "planned." Detective Martin did not recall if defendant used the word "planned" and could not say "exactly what the words were," but he said they "implied that it was definitely discussed what was going to occur." The detective also stated his written summary of the interview did not include any mention of the discussion between defendant and Johnson. However, Detective Martin explained that "the actual wording was somewhat to the effect of [defendant] knew what was going on. It was at one point in the confession, he stated that as they drove up, 'he knew what time it was,' as to the victim, that he knew he was going to be shot."

## C. Information, Plea, and Sentence

By information, defendant was charged with murder (§ 187, subd. (a)), and it was further alleged a principal was armed with a firearm in the commission of the murder (§ 12022, subd. (a)). In December 1988, defendant pleaded guilty to second degree murder. In January 1989, defendant was sentenced to 15 years

4

to life.  On the People's motion, the firearm allegation under section 12022, subdivision (a), was stricken.

## D.     Defendant's Resentencing Petition and Evidentiary Hearing

In January 2021, defendant filed a resentencing petition under section 1172.6.  The trial court determined defendant made a prima facie showing that he was entitled to relief under section 1172.6 and issued an order to show cause.  Defendant filed a brief and objections to the admission of the preliminary hearing transcript at the evidentiary hearing.  The People filed a memorandum of admissibility regarding its evidence, which included defendant's preliminary hearing transcript and Lewis's autopsy report.  The People argued the preliminary hearing transcript was admissible under section 1172.6, subdivision (d)(3), and that defendant's statements in the transcript relating to the murder fell under the hearsay exception for party admissions under Evidence Code section 1220.[2]

The trial court heard argument from the parties at the evidentiary hearing and took the matter under submission.

---

[2]     Regarding an evidentiary hearing, section 1172.6, subdivision (d)(3), provides in part, "[H]earsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."  Evidence Code section 1220 states, "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

5

**E.   Order Denying Defendant's Resentencing Petition**

The trial court issued its memorandum of decision in May 2023, denying defendant's petition. The court found the statements made by defendant to Detective Martin in the preliminary hearing transcript were admissible under Evidence Code section 1220.

The trial court recognized Detective Martin could not recall whether defendant said the word "planned" during the interview. However, the court also found Detective Martin's testimony was sufficiently consistent to establish what defendant said, and thus, it was unnecessary to corroborate defendant's statements with other evidence.[3]

The trial court found defendant "aided in the shooting of Lewis at every step," thereby aiding and abetting the commission of the life-endangering act. Furthermore, the court found defendant shared "Johnson's intent to kill [Lewis], or at the very least, was aware of and consciously disregarded the dangers of shooting a rival gang member." The court concluded the People proved beyond a reasonable doubt that defendant acted with implied malice. Defendant timely appealed.

## DISCUSSION

**A.   Governing Law and Standard of Review**

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) to clarify the felony-murder rule and eliminate the natural and probable consequences doctrine "to ensure that murder liability is not imposed on a person who is not the actual

---

[3]   Detective Martin tape recorded and memorialized the interview in writing. Neither the recording nor written statement were produced for the evidentiary hearing.

killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959.) The Legislature also added what is now section 1172.6, providing a procedure for individuals convicted of felony murder or murder under the natural and probable consequences doctrine to seek retroactive relief by petitioning the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1172.6, subd. (a).)

If a petitioner makes a prima facie showing of entitlement to relief, the resentencing court must issue an order to show cause and hold a hearing to determine whether to vacate the relevant conviction, recall the sentence, and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c), (d)(1).) At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) The court may consider evidence admitted at any prior hearing or trial that is admissible under current law, or any new or additional evidence submitted by the parties. (*Ibid.*) The trial court acts as an independent factfinder and determines whether the prosecution has met its burden. (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 984.)

We review the trial court's denial of a section 1172.6 petition following an evidentiary hearing for substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).) "[W]e review the record 'in the light most favorable to the

7

judgment below to determine whether it discloses substantial evidence–that is, evidence which is reasonable, credible, and of solid value–such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

## B. Substantial Evidence Supports the Trial Court's Finding Defendant Aided and Abetted Implied Malice Murder

Defendant argues the trial court's finding that defendant acted with implied malice is unsupported by substantial evidence. We disagree.

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) Malice "may be express or implied." (§ 188, subd. (a).) Express malice is the manifestation of intent to kill. (§ 188, subd. (a)(1).) Malice is implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned or malignant heart. (§ 188, subd. (a)(2); see *People v. Soto* (2018) 4 Cal.5th 968, 976 ["[t]he primary difference between express malice and implied malice is that the former requires an intent to kill but the latter does not"].)

"When a person directly perpetrates a killing, it is the perpetrator who must possess . . . malice. [Citations.] Similarly, when a person directly aids and abets a murder, the aider and abettor must possess malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 844–845, superseded by statute on other grounds as stated in *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 584.) "Guilt as an aider and abettor is [thus] 'based on a combination of the direct perpetrator's acts and the aider and

8

abettor's *own* acts and *own* mental state.'" (*People v. Powell* (2021) 63 Cal.App.5th 689, 710.)

A person aids and abets the commission of a crime when he or she "(i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.) Courts may consider various factors when determining whether a person is an aider and abettor, including "'presence at the scene of the crime, failure to take steps to attempt or prevent the commission of the crime, companionship, flight, and conduct before and after the crime.'" (*People v. Garcia* (2008) 168 Cal.App.4th 261, 273 (*Garcia*).)

"'In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.'" (*Reyes*, *supra*, 14 Cal.5th at p. 991.)

In this case, all factors probative of aiding and abetting the murder of Lewis are present. As the trial court found, the

evidence shows defendant aided Johnson in the shooting of Lewis "at every step," before, during, and after the crime.

Defendant identified Lewis as a rival gang member at the original hamburger stand and informed Johnson of Lewis being there. Defendant also informed Johnson he overheard Lewis and his friends discussing going to the hamburger stand at 101st Street and Figueroa Street. Defendant then drove to 1022 West 84th Street to drop off his and Johnson's girlfriends and change into the car they would later abandon. Thereafter, defendant drove to Johnson's house where Johnson retrieved the gun used in the shooting. (See *People v. Wright* (1985) 39 Cal.3d 576, 593, fn. 5 [obtaining a deadly weapon in advance of killing can support inference of planning activity].) Defendant then drove back to the original hamburger stand. Because Lewis and his friends were not there, defendant assumed they went to the hamburger stand at 101st Street and Figueroa Street, so defendant drove there. When he and Johnson arrived, defendant circled the location searching for Lewis. Defendant drove up to Lewis's car after finding it in the alley, bringing Johnson and his gun near enough to shoot Lewis. According to his confession to Detective Martin, defendant "knew what time it was"; in other words, he knew Lewis was going to be shot before the murder occurred.

After the shooting, defendant drove Johnson away from the scene to Johnson's house to drop off the gun. From there, defendant drove himself and Johnson back to where they dropped off their girlfriends and had them follow in a separate vehicle. Defendant drove the vehicle used in the shooting to a shopping center, parked it, wiped it clean of fingerprints, and left it. (*People v. Medina* (2009) 46 Cal.4th 913, 924 [evidence defendants fled after the shooting was treated as an additional

10

factor suggesting aiding and abetting liability]; see also *People v. Bonilla* (2007) 41 Cal.4th 313, 329 [flight and failure to seek assistance imply consciousness of guilt].)

In sum, all probative factors indicate defendant knew Johnson intended to commit the shooting, intended to aid Johnson in the commission of the act, aided the shooting, knew the act of shooting a person was dangerous to human life, and acted in conscious disregard for human life. (*Reyes*, *supra*, 14 Cal.5th at p. 991; see *People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 743–744 [aider and abettor can be "'one who is present . . . to take charge of an automobile and to keep the engine running, or to drive the "getaway" car and to give direct aid to others in making their escape from the scene of the crime'"].)

Defendant argues his admission that "he knew what time it was" does not show he knew Johnson would shoot Lewis because he thought Johnson would only confront Lewis with the gun. [4] However, the trial court was entitled to credit Detective Martin's testimony that defendant meant he knew Lewis was going to be shot. (*People v. Penunuri* (2018) 5 Cal.5th 126, 142 ["'"Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends"'"].) Furthermore, the court could reasonably conclude based on defendant's involvement in the many steps leading up to

---

[4]     Defendant also asserts there was no evidence he knew the gun was loaded, but a defendant does not show the evidence is insufficient by arguing about what evidence is not in the record. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

11

the murder that his statement meant he knew Johnson was going to shoot Lewis.

Defendant also cites *Reyes* in arguing there is insufficient evidence to sustain a finding he aided and abetted Lewis's shooting. In *Reyes*, gang members, including Reyes, rode their bicycles "to an area on the edge of territory belonging to a rival gang." (*Reyes, supra*, 14 Cal.5th at p. 985.) One of them had a gun, and it was used to shoot a passing driver. (*Ibid.*) In assessing Reyes's mental state, the trial court considered whether the act of traveling in the group that had the gun to rival gang territory was done with implied malice. (*Id.* at p. 991.) The Supreme Court found this was error. The trial court failed to recognize "that implied malice murder requires, among other elements, proof of the aider and abettor's knowledge and intent with regard to the *direct perpetrator's* life endangering act." In *Reyes*, the life endangering act was shooting the victim, not traveling with the group to rival territory. (See *Id.* at pp. 991–992.)

To the extent defendant suggests *Reyes's* facts are analogous to this matter, comparison with other cases "is of limited utility" in deciding issues of sufficiency of evidence because "each case necessarily depends on its own facts." (*People v. Thomas* (1992) 2 Cal.4th 489, 516.) Indeed, defendant acknowledges "[his] conduct went beyond that of *Reyes* because he drove Johnson to retrieve the firearm, told Johnson where the victim would likely be, and then drove Johnson to the victim's location and pulled the vehicle alongside the victim's vehicle." We conclude there was substantial evidence to support the trial court's finding that defendant aided and abetted Lewis's shooting.

**C.    Defendant is Not Entitled to Remand for the Trial Court to Consider His Youth at the Time of the Shooting**

Defendant asserts the order denying his petition must be vacated and the matter remanded for the trial court to consider the impact of his youth on his conduct and mental state at the time of the murder.  Defendant was 19 years old at the time of the shooting.

Defendant cites *People v. Pittman* (2023) 96 Cal.App.5th 400 (*Pittman*), in support of his argument.  In *Pittman*, the defendant, who was 21 years old at the time of the offense, argued for the first time on appeal from the denial of a section 1172.6 petition that his youth was "relevant to whether he acted with implied malice and therefore could be found guilty of second-degree murder." (*Id.* at p. 416.)  *Pittman* found "policy interests underlying the felony murder cases–that youth is relevant to a criminal defendant's ability to perceive risk and consequences, and therefore to the level of culpability–apply equally in the context of implied malice murder." (*Id.* at p. 417.)  The *Pittman* court then looked to felony murder cases "to determine whether there [was] a reasonable possibility that the failure to consider [the defendant's] youth impacted the trial court's decision." (*Ibid.*)  *Pittman* noted "[t]he cases discussing the role of youth in relation to criminal culpability 'stress two areas': youthful offenders' 'relative impulsivity' and 'their vulnerability to peer pressure.'" (*Id.* at p. 418.)  The circumstances of the offense in *Pittman* and the evidence suggested "some of these 'hallmark features of youth' may have been at play." (*Ibid.*)  *Pittman* concluded the trial court's failure to consider the defendant's youth was not harmless, given there was trial evidence indicating

"[the defendant] and his peers acted impulsively and under the influence of 'transient rashness,'" used weapons that appeared to be "spontaneous," and the motivation for the crime was "happenstance." (*Ibid.*)

In this case, the parties did not address defendant's youthfulness in the trial court, and the court did not specifically state whether it considered defendant's youth in making its ruling.[5] But even if the trial court was required to consider defendant's youth in addressing whether defendant acted with implied malice, any error was harmless.

Defendant does not present any evidence indicating his youth impeded his ability to appreciate the risks associated with his own conduct or that of Johnson. (*People v. Oliver* (2023) 90 Cal.App.5th 466, 490 ["Oliver has failed to present on appeal or in the court below *any* specific support for the proposition that his level of maturity somehow lessened his culpability for this murder"].) Defendant merely speculates that Johnson was also young, based solely on the fact he was "hanging out" with defendant, and implies that youth "likely impacted" defendant's decision to pursue Lewis. While youth "can distort risk calculations," the "fact of youth cannot overwhelm all other

---

[5] *Pittman* was decided months after the trial court issued its ruling in this case. Defendant does not contend he asked the court to consider his youth when determining whether he acted with implied malice. (See *People v. Partida* (2005) 37 Cal.4th 428, 435 ["A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct"].) However, the People do not argue defendant forfeited the argument by not raising it. We exercise our discretion to consider defendant's argument regarding whether the matter must be remanded for the court to consider his youth at the time of the shooting.

factors" bearing on the assessment of defendant's mental state. (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 595 ["every 18 year old understands bullet wounds require attention"].)

Based on the trial court's finding that defendant "aided in the shooting of Lewis at every step," and evidence that defendant "shared Johnson's intent to kill the victim, or at the very least, was aware of and consciously disregarded the dangers of shooting a rival gang member," we find no reasonable possibility the failure to consider his youth impacted the court's decision. (*Pittman*, *supra*, 96 Cal.App.5th at p. 417; accord, *Oliver*, *supra*, 90 Cal.App.5th at p. 489, fn. 8.)

## DISPOSITION

The order is affirmed.



MORI, J.

We concur:



COLLINS, Acting P. J.



ZUKIN, J.

15